# WILLIAM H. KIERNAN

## v.

# THE CHICAGO, SANTA FE AND CALIFORNIA RAILWAY COMPANY.

*Filed at Ottawa November 11, 1887.*

1. EMINENT DOMAIN—*measure of damages—elements to be considered—as to land taken and land not taken, generally.* In assessing the value of the land taken, in a proceeding to condemn for railroad purposes, and the damages to land not taken, the jury should not assess the same on the basis of what the owner would take for the same or any part thereof, or what the jury would take if they were the owners.

2. The proper measure of damages, in such case, is the actual fair cash market value of the land taken, and the decrease in the actual fair cash market value of the land and property not taken, by reason of the construction and operation of the railroad.

3. SAME—*damage to land not taken, how to be ascertained.* In assessing the damages to the market value of the land and property not taken, the jury should not take into consideration anything as an element of damages which is remote, or imaginary, or speculative, even though mentioned or testified to by witnesses, but the only elements they should consider as tending to reduce the market value, are those which are appreciable and substantial, and which will actually lessen the market value of the property.

4. In such a case, the land owner gave in evidence the opinions of witnesses as to the amount of the depreciation of the market value of his farm, by the railroad crossing it in the manner proposed. Evidence was admitted on the part of the petitioner, as to how the selling value of other farms in the county crossed by railroads had actually been affected thereby, as shown by cases of sales that had taken place: *Held,* that this evidence was not properly admissible in rebuttal, but as it did not appear that it did any harm, the error was not sufficient to call for a reversal.

5. SAME—*damage from diverting water-course.* Where a railway company, in a condemnation proceeding for a right of way for its road, sought to divert a stream of water crossing the line of the road, so as to confine it on one side of the road, the petitioner introduced evidence tending to show that the stream was the receptacle of all the sewage of a city in the vicinity, and by such use had become so befouled as to be practically worthless for stock water: *Held,* that the evidence was competent as showing the nature and condition of the stream, and bearing upon the question of damages claimed for the diversion of the stream.

6. SAME—*viewing the premises by the jury, as governing their action contrary to opinions of witnesses.* The result of a jury's personal view of the land over which a railroad is sought to be laid, is evidence proper to be acted upon by them; and if they believe, from the whole evidence, that they have, from such view, arrived at a more accurate judgment as to the value of the premises sought to be taken, and of the damages, than that shown by the evidence in open court, they may, upon the evidence, rightfully fix the value of the land taken, and the damages, at the amount so approved by their judgment formed from the personal examination, even though it differed from the amount testified to, and the weight of testimony given by witnesses in open court.

7. SAME—*jury in a second proceeding—how selected.* After the selection of a jury from the sixty-four names written by the clerk in a condemnation proceeding for a right of way, a second proceeding for condemnation was commenced. Thereupon the clerk took the residue of the names of the freeholders before written on slips of paper, which remained after the drawing of the prior jury, about a month before, examined them, rejecting such as appeared to be interested in the second case, and writing new names of freeholders sufficient to make sixty-four, from these names selected, by lot, another jury of twelve. The array thus selected was challenged on the sole ground that the clerk did not, at the time of issuing the summons, write the names of the fifty-two freeholders remaining after the drawing of the first jury: *Held,* that the challenge was properly disallowed, as the re-writing of their names on new slips of paper would have been an idle and useless act.

8. INSTRUCTIONS—*in writing—oral direction to amend finding of jury in condemnation proceeding.* Where the jury in a condemnation proceeding fails to find any damages for the diversion of a stream, the court may direct the jury orally, on the return of their report, to find some amount as such damages, under section 9 of the Eminent Domain act, allowing amendments under the direction of the court. Such direction is not a violation of the statute requiring the court to instruct in writing.

9. WEIGHT OF EVIDENCE—*to be determined by the jury.* On the assessment of compensation and damages for right of way, the jury are not obliged to accept a witness' statement or testimony as sworn to. If, from the entire testimony, and their inspection of the premises, they believe any witness has exaggerated the value of the land or the damages, it is their right and duty to disregard the testimony of such witness, in so far as it is thus unjustly exaggerated.

APPEAL from the County Court of Knox county; the Hon. P. H. SANFORD, Judge, presiding.

Mr. GEORGE W. THOMPSON, and Mr. F. A. WILLOUGHBY, for the appellant:

The statute requires the clerk to write the names of sixty-four persons from which to select a jury, at the time of issuing the summons. The writing of the names on April 9 is not a compliance with the statute requiring this to be done on May 21 following.

The court erred in allowing witnesses living at a distance from the land in controversy, and who had not seen it, to testify generally as to the effect of railroads cutting farms, on their selling price, without any reference in their testimony to appellant's farm.

There was error in admitting evidence showing that Cedar Fork was made the receptacle of a portion of the sewage of the city, and a drainage from the dye works and other places, for the reason that such pollution was illegal. Neither a private individual nor a municipal corporation has a right to pollute a stream to the injury of riparian owners, or those whose property it runs through, and such nuisance may be enjoined. *Jacksonville* v. *Lambert*, 62 Ill. 519; *Haskell* v. *New Bedford*, 108 Mass. 213; High on Injunctions, sec. 810; Wood on Nuisances, 848.

The court erred in giving plaintiff's second instruction. It authorized the jury to disregard the evidence of the witnesses, and act upon their own judgment as to the value of the land and the damages, and also gave undue prominence to the evidence derived from a personal inspection, and this has been frequently condemned. *Martin* v. *Johnson*, 89 Ill. 537; *Callaghan* v. *Meyers*, id. 537; *Aurora* v. *Hillman*, 90 id. 62; *Moore* v. *Wright*, id. 471.

In the third instruction, the court properly told the jury that they should not assess the damages on the basis of what the owner would take for the same, or what the jury would take if they were the owners; but the court went further, and told them these matters should not be taken into consideration

in fixing the damages, and this was error, as these matters enter into and help to form the market value of the land, in connection with the other evidence.

The fifth instruction was erroneous, tending to mislead the jury, by submitting to their consideration the question what damages are remote, imaginary, uncertain or speculative, and was not based upon any evidence. It is for the court to pass on the competency of evidence. *Wickliffe* v. *Lynch*, 36 Ill. 210; *Byers* v. *Thompson*, 66 id. 421; *White* v. *Murtland*, 71 id. 250.

The ninth instruction is erroneous. A jury have no right, arbitrarily, to reject the testimony of an unimpeached witness. *(Railroad Co.* v. *Coultas*, 67 Ill. 399.) The court also erred in giving the jury an oral instruction as to the form of their verdict.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for the appellee :.

The challenge to the array was properly overruled. Every requirement of the statute had been, with painstaking care and fidelity, observed by the county clerk in its selection.

The jury having made personal examination of the premises, the knowledge gained thereby was evidence, which it was the duty of the jury to consider. The second of petitioner's instructions correctly stated the law upon this point. Rev. Stat. chap. 47, sec. 9; *Mitchell* v. *Railroad Co.* 85 Ill. 567; *Railroad Co.* v. *Hopkins*, 90 id. 323; *Green* v. *Chicago*, 97 id. 372; *McReynolds* v. *Railway Co.* 106 id. 156; *Railway Co.* v. *Bowman*, id. 161.

The third instruction correctly stated the law as to the basis of compensation. *Railroad Co.* v. *Walsh*, 106 Ill. 255; *Railroad Co.* v. *Jacobs*, 110 id. 416; *Dupuis* v. *Railway Co.* 115 id. 99.

The fifth instruction on behalf of petitioner properly told the jury what elements of damage should be considered in arriving at a proper estimate of just compensation. Nor is it

properly subject to the criticism of seeking to make the jury judges of the law.   It had appeared, upon cross-examination of witnesses introduced by defendant, that their estimate of damage was, to a very great extent, imaginary and speculative. This instruction simply advised the jury that such supposititious elements of damage did not properly enter into the estimate of just compensation.

The ninth instruction for petitioner advised the jury that they should carefully scrutinize the testimony of each witness, giving due weight thereto, rejecting so much thereof as, upon the whole evidence, they justly deemed unworthy of credit, whether by reason of interest, prejudice, want of knowledge and experience, or truthfulness.   This it was plainly the duty of the jury to do.

It was their right, and their duty as well, to consider the entire evidence, and not to arbitrarily reject the testimony of an unimpeached witness; but they rightly might discard and disregard such part of the testimony of any witness as was evidently untrustworthy, and in the teeth of the truth.

Under the ninth section of the Eminent Domain act, the court, in directing the jury how so to amend their report as clearly to set forth and show the just compensation ascertained, is not confined to written instructions, as in ordinary cases.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a petition filed by the appellee, the Chicago, Santa Fe and California Railway Company, in the county court of Knox county, on May 21, 1887, for the condemnation of a strip of land through the farm of appellant, for appellee's right of way.   Appellant's farm consists of 132 acres, situated about three miles west of Galesburg, on adjoining lands, in sections 19 and 20.   The right of way takes $10\frac{56}{100}$ acres of land, and cuts the farm in such shape that a triangle of over

12 acres is left on the north side of the right of way on section 19, and a triangle of 9 acres north of the right of way on section 20. The petition proposed to change the course of a stream called Cedar Fork, which, if not diverted, would flow, in its natural state, on each side of the land taken for right of way, but as proposed to be changed, would be diverted entirely from the 40 acres south of the right of way, on section 19. The jury found appellant was entitled to $750 as compensation for land taken, to $975 as damages to land not taken, not including damages for change of creek, and to one dollar for damage for diversion of the creek. There was judgment on the verdict, and appellant brings the case to this court, assigning as error the rulings of the county court.

It is assigned as error that the court should have allowed the challenge to the array of jurors. There had been a prior condemnation case in April previous, at which time the county clerk followed the statute in selecting the jury at the time of issuing the summons in the case, writing the names of each of sixty-four disinterested freeholders on sixty-four slips of paper, and selecting from these sixty-four, the names of twelve jurors. The county clerk, in the present case, took the residue of the sixty-four names remaining after drawing the jury in the prior case a month before, examined them, rejecting any appearing to be interested, and writing sufficient new names to fill up the required number (sixty-four) and then drawing from these the jury. The requirement of the statute is: "In cases fixed for hearing of petition in vacation, it shall be the duty of the clerk of the court in whose office the petition is filed, at the time of issuing summons or making publication, to write the names of sixty-four disinterested freeholders of the county on sixty-four slips of paper, and, in presence of two disinterested freeholders, cause to be selected from said sixty-four names, twelve of said persons to serve as jurors, such selection to be made by lot, and without choice or discrimination." The sole reason for the challenge is, that in the present

13—123 ILL.

case the clerk did not, "at the time of issuing summons, write the names," etc., of the fifty-two disinterested freeholders remaining from drawing the jury in the previous case. The names were already written, and to re-write them would have been a mere idle act. The challenge was groundless.

The next assigned error is, that the court admitted improper evidence on behalf of the petitioner. Witnesses on behalf of the defendant had given their opinions as to the amount of the depreciation of the market value of appellant's farm, which would be caused by the railroad running across it in the manner proposed. Evidence was admitted on the part of the petitioner as to how the selling value of other farms in the county, cut by railroads, had actually been affected thereby, as shown by cases of sales which had taken place. This is claimed to have been improper. While we regard this evidence as not properly admissible, we think, in view of all the evidence before the jury, it could not, in this instance, have done any harm, and we can not hold its admission to be sufficient ground for reversal of the judgment.

Objection is taken to the admission of evidence tending to prove that Cedar Fork, the stream to be diverted, was the receptacle of all the sewage of the city of Galesburg, and by such use had become so befouled as to be practically worthless for stock water. This was competent evidence, as showing the nature and condition of the stream, and bearing upon the question of the damages which were claimed for the diversion of the stream. It tended to show appellant's own estimate of its value and need to him, in his suffering such pollution of the stream. It is said there was no right thus to pollute the stream. The jury was fully instructed in this respect, and it was for their consideration how long might be the continuance of the existing condition of the stream. The land from which the stream was to be diverted was watered by another stream.

The giving of instructions for the petitioner is assigned as error.

The jury, in accordance with section 9 of the Eminent Domain act, went upon the land, and examined the same.  The second instruction given for the petitioner, and objected to, informs the jury that the result of their personal view of the premises was evidence properly to be taken into consideration in making up their verdict,—that if they believed, from the whole evidence, that they had, from personal examination of the premises, arrived at a more accurate judgment and determination as to the value of the premises sought to be taken, and of the amount of damages, than is shown by evidence in open court, then and in that case they might, upon the evidence, rightfully fix the value of land taken, and the amount of damage, at the amount so approved by their judgment so formed from personal examination of the premises, as a jury, even though it might differ from the amount testified to, and from the weight of testimony given by witnesses in open court.  This accords with what this court has heretofore said upon this subject.  (*C. and I. Railroad Co.* v. *Hopkins,* 90 Ill. 323; *Green* v. *City of Chicago,* 97 id. 372; *McReynolds* v. *B. and O. Railway Co.* 106 id. 156; *Mitchell* v. *I. and St. L. Railroad Co.* 85 id. 566.)  In the case first cited it was said, the result of the jury's own personal examination, when they go upon and view the land, may have been such as to have justified the assessment made, even if it was clear the preponderance of evidence preserved in the record was against the amount of the assessment.  We do not perceive that the instruction is open to the criticism made upon it, that it gives undue prominence to that portion of the evidence derived from personal inspection.

It is insisted the court erred in giving petitioner's third instruction, as follows:

"In assessing the value of the land actually taken and the damages to the land not taken, you should not assess the same on the basis of what the owner would take for the same, or any part thereof, or what you would take and let the railroad go

across the lands if you were the owner of them. These are improper to be taken into consideration, either in fixing the value of the land taken, or in assessing the damages to the land not taken; but you should, at all times, keep in mind that the actual fair cash market value of the lands taken, and the decrease, if any, in the actual fair cash market value of the lands and property not taken, by reason of the construction and operation of the railroad, are the proper measure of damages and compensation which you are to ascertain in this case."

It is admitted the first clause of the instruction is correct, but the objection taken to the instruction is to that portion of the second clause which says the matters in the first clause were improper *to be taken into consideration* in fixing the damages. If the damages should not be assessed upon the basis of those matters, as is conceded, then we do not see that it was improper to say they should not be taken into consideration in assessing the damages. The proper measure of damages and compensation was given in the subsequent part of the instruction. *J. and S. E. Railroad Co.* v. *Walsh*, 106 Ill. 255; *Chicago and Evanston Railroad Co.* v. *Jacobs*, 110 id. 416; *Dupuis* v. *C. and N. Wis. Railway Co.* 115 id. 99. And to the instruction, as a whole, we perceive no substantial objection.

In the fifth and ninth instructions, which were objected to, we find no substantial error. They are as follows:

"5. In assessing the damages to the market value of the property not taken, you should not take into consideration anything as an element of damages which is remote, or imaginary, or uncertain, or speculative, even though mentioned or testified about by witnesses; but the only elements which you should take into consideration as tending to reduce the market value, are those which are appreciable and substantial, and which will actually lessen the market value of said property."

"9. You are further instructed, that if you believe, from the entire testimony, and from your inspection of the premises, that any witness has magnified or exaggerated the value of the land taken, or the damages to the land not taken, on account of his interest in the suit, or his prejudice, or want of knowledge, or experience or truthfulness, then you have the right, and it is your duty, to disregard the evidence of such witness in so far as the same is unjustly magnified or unjustly increased, either as to the value of the land taken or the damages to the property of the defendant not taken."

The objection taken to the fifth instruction is, that it submits to the consideration of the jury what damages are "remote, imaginary, uncertain or speculative," whereas that is a matter of law, upon which the court should pass. The court did indicate its opinion in that respect in the last clause of the instruction, in naming to the jury what were the only elements of damage they should consider.

The ninth instruction does not go to the length, as counsel would seem to intimate, of telling the jury that they might arbitrarily disregard the testimony of unimpeached witnesses. It was but to the effect that the jury were not obliged to accept a witness' statement as sworn to, but that if, from the entire testimony, and their inspection of the premises, they believed any witness had exaggerated the value of the land or the damages, then it was their right and duty to disregard the evidence of such witness, in so far as it was thus unjustly exaggerated. We think this was well enough said.

When the jury returned into court with a verdict, the finding in it was "blank dollars" damages for diversion of Cedar Fork creek. The counsel for petitioner stated to the court they desired the jury should find some sum, as, one cent or one dollar, as damages for the diversion of the creek, and requested that the jury might be allowed to amend their verdict in that regard. Thereupon the judge of said court stated to the jury that they should find at least a nominal sum for the diversion

of said creek, but it was for them to say, under all the evidence, what their finding should be in that regard, and that they might retire and consider further of their verdict; and the jury did so, and returned their verdict with the word "blank" stricken out, and "one" written in, instead. Exception is taken to this action of the court, as instructing the jury orally, contrary to the statute in that regard. The ninth section of the Eminent Domain act provides, that the jury, having examined the premises and heard the proof, shall make their report in writing, and the same shall be subject to amendment by the jury, under the direction of the court or the judge, as the case may be, so as to clearly set forth and show the compensation ascertained to each person entitled thereto. The action of the court was justified under this provision of the Eminent Domain act.

The judgment will be affirmed.

*Judgment affirmed.*