JOHN B. BROWN

*v.*

THE CALUMET RIVER RAILWAY COMPANY.

*Filed at Ottawa October 2, 1888.*

1. EMINENT DOMAIN—*measure of damages—of an instruction in respect thereto.* In a proceeding for the condemnation of land for right of way for a railroad, the court instructed the jury, that in considering the compensation to be paid for the land about to be taken, they should fix the actual cash value of the land taken, and that they were not to consider the price at which the property would sell for under special or extraordinary circumstances, but its fair cash market value if sold in the market under ordinary circumstances, for cash, and not on time, and assuming that the owner is willing to sell and a purchaser is willing to buy: *Held,* that there was no error in the instruction. Such an instruction does not make a distinction between the market value and the cash value of the property.

2. SAME—*evidence on the question of value of property.* On the hearing, in 1887, of a proceeding to condemn land for a right of way by a railway company, the land owner stated that he bought the property in 1880, and then proceeded to state what improvements then existed in its vicinity and what have since been made there affecting its value, and what other considerations, in his opinion, affected and enhanced its present value. On cross-examination, he was asked what he paid for the land when he bought it, which was objected to: *Held,* there was no error in allowing the ques-

tion. The original cost, though not a very material circumstance, was a proper one to be considered, as tending, in a slight degree, to affect the question of value.

3. SAME—*existence of corporation seeking condemnation—how questioned.* In a proceeding by a railway company to obtain a right of way, the county court has no jurisdiction to determine whether or not the petitioner is a *bona fide* corporation, within the meaning and spirit of the law. That can be done only on *quo warranto.*

4. SAME—*location of line of railway—admission of land owner.* Where the land owner, by his cross-petition for damages to land not sought to be taken, alleges that the petitioner has located its right of way over and across the premises, describing them, this will be regarded as an admission that the petitioner has located its line of road, within the meaning of the law.

5. SAME—*practice—time to object that location of line of road has not been shown.* The objection that a railway company seeking to condemn for a right of way, has not located its line of road, should be addressed to the court before evidence is given to the jury, when the court would have required satisfactory proof in that regard. The objection comes too late on appeal or error.

6. WITNESS—*impeachment—laying the proper foundation.* In order to prove the prior statement or admission of a witness by way of impeachment, it is only necessary to call his attention to the substance of such statement or admission.

7. In a proceeding to condemn land claimed to be valuable for dock purposes, the owner, on cross-examination, was asked if he did not say to A, about a year before, in the office of the former, that the land was worth $300 an acre as it lay, and it would not pay to improve it with docks. The owner answered: "No, sir; we were talking about this property and land in the C. farm—not about this property." A was called, who, after stating he had the conversation referred to, was asked what property was the subject of the conversation, and answered that he understood it to apply to the property, generally, on the C. river, and said: "But in our conversation we were referring to the A. property. What brought about our conversation was that, but we were talking about the river front, generally,—as to its personal value and cost of improvement." He was then asked, "What did Mr. B. (the owner) say on that occasion," and replied: "He said there was no river property that was worth to exceed $300 an acre. Says he, 'It cost me $4000 an acre to fill it:'" *Held,* that a proper foundation was laid for the inquiry as to what the owner did say in the conversation referred to.

8. EVIDENCE—*proof of admission of party in interest—preliminary proof.* It is always competent to prove an admission of a party in interest, to his prejudice, when it relates to a matter material to an issue being tried, without previously examining him in reference to it.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. OSBORN & LYNDE, for the appellant:

The court erred in allowing the petitioner, on cross-examination, to examine Brown as to the price which he had paid for the property in controversy, in 1880. *Stinson* v. *Railway Co.* 27 Minn. 288; *Railroad Co.* v. *Heister*, 40 Pa. St. 55; *Railroad Co.* v. *Rose*, 74 id. 362; *Dietrichs* v. *Railroad Co.* 12 Neb. 225.

If the evidence is admissible to show the basis on which the opinion of the witness is founded, it should be limited to sales at or about the date in question. *Watson* v. *Railway Co.* 57 Wis. 350; *Railroad Co.* v. *Pearson*, 35 Cal. 362.

The court erred in permitting the petitioner to examine the witness Arnick, in rebuttal, as to a conversation between him and Brown, and as to what Brown then said.

The true test of the compensation to be paid for land taken, is the market value of the land, and not the price it would bring at a forced sale. *Haslam* v. *Railroad Co.* 64 Ill. 355; *Railroad Co.* v. *Jacobs*, 110 id. 417; *Railroad Co.* v. *Catholic Bishop*, 119 id. 528; *Railroad Co.* v. *Doughty*, 22 N. J. L. 503.

The court has jurisdiction to inquire into and determine whether the petitioner is, in fact, abusing the powers conferred upon it. *Smith* v. *Railroad Co.* 105 Ill. 511; *Railroad Co.* v. *Dix*, 109 id. 237; *Railroad Co.* v. *Wiltse*, 116 id. 449.

Mr. FRANK J. LOESCH, and Mr. CHARLES A. ALLEN, for the appellee:

The *Smith case*, 105 Ill. 511, the *Dix case*, 109 id. 237, and the *Wiltse case*, 116 id. 449, are not pertinent. Those were cases where the petitioner was abusing its powers to condemn. Here, appellant denies, *in toto*, the power of appellee to condemn.

It is sufficient, for the purposes of condemnation, that the petitioner is a corporation *de facto*. *McAuley* v. *Railway Co.* 83 Ill. 348; *Railroad Co.* v. *Railway Co.* 105 id. 110; *Railway*

*Co.* v. *Railroad Co.* 112 id. 589; *Ward* v. *Railroad Co.* 119 id. 287; *Henry* v. *Railroad Co.* 121 id. 264.

The question of the location of the road was not one for the jury. *Smith* v. *Railroad Co.* 105 Ill. 511; *Ward* v. *Railroad Co.* 119 id. 287.

Proof of the price paid for land tends to prove its value. *Dietrichs* v. *Railroad Co.* 12 Neb. 225; *Ham* v. *City of Salem,* 100 Mass. 350; *Railroad Co.* v. *Smith,* 42 Ark. 265.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a proceeding in the county court of Cook county, instituted by the Calumet River Railway Company, against John B. Brown, to condemn for right of way a strip of land sixty feet in width over a tract of land belonging to him, lying on the east side of and adjoining to Calumet river, and extending from One Hundredth street, on the north, to One Hundred and Sixth street, on the south. The quantity of land thus sought to be taken is $4\frac{66}{100}$ acres. Brown filed a cross-petition, in which he alleged, among other things, that the tract of land over which the proposed right of way is located, is known as block B, in South Chicago, of which he is the owner; that it has a river front of more than three hundred feet, and a depth of more than seven hundred feet; that the river is navigable, and the property fronting thereon has especial value for dock and wharf purposes; that he had designed locating and constructing wharfs and docks thereon, similar to those of the South Chicago Dock Company on the opposite side of the river, with slips extending the entire depth of the block; that the property is especially valuable and available for this form of improvement, and could thus be made available as a whole; that the right of way, as located, cuts through the middle of the block, and cuts off from the river front a strip containing more than 20 acres, preventing its use for the construction of docks, and taking away the greater part of its value, and that

the remainder of the block not taken will be damaged $50,000. A jury was duly impaneled, and, after hearing the evidence, they went upon the premises sought to be taken and those claimed to be damaged but not taken, and afterwards rendered their verdict, whereby they found that Brown was entitled to $4600 for the land actually taken, and that he sustained damages to the land not taken to the amount of $12,900. Motion for new trial was made by Brown, but overruled by the court, and the court thereupon entered judgment upon the verdict of the jury. Brown brings the case here by appeal.

The several objections urged as grounds of reversal will be considered in the order of their presentation in the argument of counsel for appellant.

*First*—The court below allowed the petitioner, on cross-examination of Brown, to inquire of him what he paid for the tract of land affected by the proceeding when he bought it, and it is contended this was erroneous, because it has no tendency to establish the present value. This the court, in effect, said, in admitting the evidence, but held it admissible, as tending to test the correctness of the opinion which the witness had previously expressed of the present value of the land. We think the ruling is liable to no serious objection. The witness had stated that he bought the property in 1880, and then proceeded to state what improvements then existed in its vicinity, and what improvements had since been made there affecting its value, and what other considerations, in his opinion, affected and enhanced its present value. Certainly the petitioner might show that any fact thus claimed to enhance value was not as claimed by the witness, or that there were other modifying circumstances tending to affect the question of the value, reference to which the witness had omitted. The original cost, though not a very material circumstance, was certainly a proper one, tending, in a slight degree, to affect the question. The line of inquiry pursued by appellant assumed there had been very great appreciation in value after his purchase, and it is

impossible to perceive how he could have been injured by show-ing precisely how great he claimed the appreciation had been.

*Second*—On cross-examining Brown, he was asked by the petitioner, "Did you not say to Mr. Amick, about a year ago, in your office, that this land was worth $300 or $400 an acre as it lay there, and it would not pay you to improve it with docks,—this property in question?" He answered, "No, Sir. We were talking about this property and land on the Chittenden farm, not about this property." When Amick was examined by the petitioner, he was, among other things, after his stating that he had a conversation with Brown upon the subject, and at the time and place alluded to in the interrogatory to Brown, asked: "Concerning what property was the conversation be-tween you and Mr. Brown?" He answered: "The conversation, as I understand it, applied to the river property, generally, on the Calumet river; but in our conversation we were referring to the Anderson property. What brought about our conver-sation was that, but we were talking about the river front, generally, as to its personal value and costs of improvement." He was then further asked, "What did Mr. Brown say on that occasion?" He replied: "He said there was no river property that was worth to exceed $300 an acre. Says he, 'It cost me $4000 an acre to fill it.'" It is objected, that no proper foun-dation was laid for the introduction of this evidence. We think otherwise. It was only necessary to call Brown's attention to the substance of his admission, (*Craig* v. *Rohrer*, 63 Ill. 325,) and that, in our opinion, was here sufficiently done. Apart from this, however, it is always competent to prove an ad-mission of a party in interest to his prejudice, where it relates to a matter material to an issue being tried, (1 Greenleaf on Evidence, sec. 172,) and therefore, although this evidence may not have been competent for the purpose of impeaching Brown, it was competent as proving an admission by him against his interest, and in that view it was not necessary that he should have been previously examined in regard to it. (*McCoy* v.

*The People,* 71 Ill. 111.) In either view, therefore, there was no error in admitting the evidence.

*Third*—The sixth instruction given by the court, at the instance of the petitioner, is as follows:

"The jury are instructed, that in considering the compensation to be paid to the defendant for the land about to be taken, they are to fix the actual cash market value of the land taken. And they are further instructed, that they are not to consider the price which the property would sell for under special or extraordinary circumstances, but its fair cash market value if sold in the market, under ordinary circumstances, for cash, and not on time, and assuming that the owners are willing to sell and the purchaser is willing to buy."

It is objected that this introduces a condition and qualification as to the measure of the compensation to be allowed, not warranted by authority or reason, in that it draws a distinction between the market value and the cash value of the property. This precise form of instruction was approved in *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 188, and *Calumet River Railway Co.* v. *Moore,* 124 id. 329. In legal contemplation, the present market value of property is its present cash value in market, unless something is said showing that a valuation on a time sale is intended.

*Fourth*—The modification of the first, second and fourth of appellant's instructions was to conform to the ruling in giving the petitioner's sixth instruction, and therefore was not objectionable.

*Fifth*—It is contended the petitioner is not a *bona fide* corporation, within the meaning and spirit of the law, and the purpose, in fact, for which it seeks to condemn property, is not one for which the right of eminent domain is given. This question is not presented in *Railroad Co.* v. *Dix,* 109 Ill. 237, and *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 id. 449. There, a valid corporation existed, but the question was, the extent of its corporate powers. But the question here is,

whether that which is a corporation *de facto* is also one *de jure,* for, if the validity of the corporation be conceded, so far as any evidence in this record discloses its purpose in condemning, it is unobjectionable.   It is clear that can be determined only on *quo warranto.*   The county court is vested with no such jurisdiction in proceedings to condemn right of way.   *Henry et al.* v. *Centralia and Chester Railroad Co.* 121 Ill. 264; *Ward* v. *M. & N. W. Railroad Co.* 119 id. 287.

*Sixth*—It is objected, no evidence was offered to show that the petitioner had located and laid out its line of road, within the meaning of the law.   But this is admitted in the cross-petition, and hence no proof was necessary.   It alleges "that the said Calumet River Railway Company, the petitioner in said condemnation proceeding, has located its right of way over and across the premises, (describing them) and is seeking, by the said condemnation proceeding, to take the land," etc.   But, in any event, this objection, if tenable, should have been addressed to the court before evidence was given to the jury, and the court would then have required satisfactory proof in that regard.   It comes too late now.   *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Ward* v. *M. & N. W. Railroad Co.* 119 id. 287.

On the whole record, we find no cause to disturb the judgment below.   The jury were fully and accurately instructed, in instructions not herein set out, as to every phase of the law materially affecting appellant's rights, and there is ample evidence in the record to sustain the verdict.

The judgment is affirmed.

*Judgment affirmed.*