Syllabus.

# The Peoria Gas Light and Coke Company

## v.

# The Peoria Terminal Railway Company.

*Filed at Ottawa June 19, 1893.*

1. EMINENT DOMAIN—*evidence of the value of land taken.* In a proceeding by a railway company to condemn land for a right of way, evidence of the prices paid by the petitioner to other property owners for right of way along its line is incompetent, and not admissible.

2. Evidence of sales of other similar property in the neighborhood, at or about the same time, tends to show the fair market value of the property sought to be condemned; and such sales, when made in a free and open market, where a fair opportunity for competition has existed, become material and important factors in determining the value of particular property. But to have that tendency they must have been made under circumstances where they are not compulsory, and where the vendor is not compelled to sell, at all events, but is at liberty to invite competition among those desiring to purchase.

3. SAME—*evidence of amount of damages.* On the trial of a proceeding to condemn land for a public use, the court instructed the jury that they were the judges of the credibility of the witnesses, and the value of their testimony in relation to the compensation and damages; and if, after full consideration of all the testimony in the case, with their own inspection of the premises, they might conclude their inspection was a more reliable basis for the estimate and assessment of compensation and damages, then they had the right, under the law, so to do, but that they should not arbitrarily and without reason reject any of the testimony: *Held,* the instruction was erroneous.

4. SAME—*personal view—in the nature of evidence.* The results of a personal view of the premises by the jury in condemnation cases are in the nature of evidence, and may be taken into consideration by them in passing upon the testimony of the witnesses, and when the evidence is conflicting they may be resorted to by the jury as bearing upon the weight to be given to the variant and conflicting estimates given by the various witnesses. But the jury should be required to act upon all the evidence, and not upon the evidence furnished by their personal view.

5. An instruction in a condemnation proceeding which authorizes the jury to base their estimate of compensation and damages solely upon their own inspection of the premises, provided, only, they are of opinion such inspection furnishes a more reliable basis for an assessment than the evidence of the witnesses, is erroneous.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

Mr. WINSLOW EVANS, and Messrs. JACK & TICHENER, for the appellant:

It was not competent evidence to show the prices paid by the petitioner for other property for the same use. *Kelliher* v. *Miller*, 97 Mass. 71; *Presbrey* v. *Railroad Co.* 103 id. 1; *Print Works* v. *Fall River*, 110 id. 1; *Donovan* v. *Springfield*, 125 id. 371; *Howard* v. *Providence*, 6 R. I. 514; *Railroad Co.* v. *McLaren*, 47 Ga. 546; *Springfield* v. *Schmook*, 18 Mo. 395; *Railroad Co.* v. *Blake*, 116 Ill. 163; *Railway Co.* v. *Moore*, 124 id. 329; Lewis on Eminent Domain, sec. 447.

As to the right of the jury to act upon information derived from a personal view of the premises, see *McReynolds* v. *Railway Co.* 106 Ill. 156; *Railroad Co.* v. *Schneider*, 127 id. 144; *Mitchell* v. *Railroad Co.* 85 id. 567; *Railroad Co.* v. *Hopkins*, 90 id. 323; *Washburn* v. *Railroad Co.* 59 Wis. 364.

Mr. GEORGE B. FOSTER, and Messrs. STEVENS & HORTON, for the appellee:

As to the evidence afforded by a personal view of the premises, see *Stockton* v. *Chicago*, 136 Ill. 436; *McReynolds* v. *Railway Co.* 106 id. 156; *South Park Comrs.* v. *Trustees*, 107 id. 489; *Railroad Co.* v. *Blake*, 116 id. 163; *Railroad Co.* v. *Hopkins*, 90 id. 316.

Complaint is made that the court allowed witnesses for the appellee to state what had been paid to other owners for right of way along the same line. The competency of such evidence is sanctioned by the universal practice in this State. We call attention to a few of the decisions of our courts upon that question, and the admissibility of the evidence of witnesses, though not shown to be experts: *Railroad Co.* v. *Railroad Co.* 112 Ill. 589; *Railroad Co.* v. *Blake*, 116 id. 163; *Kiernan* v. *Railway Co.* 123 id. 188; *Johnson* v. *Railroad Co.* 111 id. 413;

*Green* v. *Chicago,* 97 id. 370 ; *Railroad Co.* v. *Haslam,* 73 id. 494 ;•*Railroad Co.* v. *Winslow,* 66 id. 219 ; *Springfield* v. *Dalby,* 139 id. 34.

The instruction complained of is not erroneous. *(Kiernan* v. *Railway Co.* 123 Ill. 188.) It is substantially approved in *Railway Co.* v. *Hopkins,* 90 Ill. 323 ; *Green* v. *Chicago,* 97 id. 372 ; *Mitchell* v. *Railroad Co.* 85 id. 566 ; *McReynolds* v. *Railway Co.* 106 id. 156 ; *Johnson* v. *Railway Co.* 111 id. 413.

Mr. Justice Bailey delivered the opinion of the Court:

This was a proceeding under the Eminent Domain Law, brought by the Peoria Terminal Railway Company against the Peoria Gas Light and Coke Company, to condemn for right of way, a portion of the premises owned and occupied by the defendant with its buildings and other improvements and machinery, constituting its gas works. The premises of the defendant consist of one block of ground, bordering upon the Illinois River, and being something over 400 feet in length along the river, and about 300 feet in width, and containing about three acres. The land sought to be condemned consists of a strip 50 feet in width, along the margin of the river, and running the whole length of the defendant's premises, and containing forty-eight one-hundredths of an acre. At the. trial, the jury, after hearing the evidence and viewing the premises, rendered their verdict, fixing the compensation to be paid the defendant for the strip of land taken at $4550, and assessing the damages to the land not taken at $2750, making the total of the compensation and damages $7300.

Upon this verdict, judgment was entered in the usual form, and the defendant brings the record to this court by appeal.

As furnishing evidence of the value of the land proposed to be taken, the petitioner was permitted, against the objection and exception of the defendant, to prove by several witnesses, what the petitioner had paid other property owners

for right of way along the same line, and the decision of the court admitting that evidence is assigned for error. The propriety, in cases of this character, of admitting proof of sales of other similar property, made at or about the same time, though doubted and even denied in some of the States, seems to us to be supported by the better reason as well as by the greater weight of authority. Lewis on Eminent Domain, sec. 443, and cases cited in notes. In this State its admissibility has been expressly affirmed in a few cases, and indirectly recognized in many others. Thus, in *Provision Co.* v. *City of Chicago,* 111 Ill. 651, a witness was permitted to give evidence as to the price at which another lot had been sold, without testifying as to the value of either that lot or of the one sought to be condemned, and it was held that there was no error in the admission of the evidence, it being said: "From the very necessities of the case, actual sales of property in the vicinity, and near the time, are competent evidence, so far as they go. On cross-examination, all circumstances can be drawn out, showing that the given sale fails, and how much, of being a fair criterion of value."

In *C. & W. I. R. R. Co.* v. *Maroney,* 95 Ill. 179, evidence as to what an adjoining lot had been sold for being offered in rebuttal, was excluded. The judgment was affirmed on the ground that the proof offered was properly evidence in chief, but it was remarked that, if it had been offered in the first instance, it would doubtless have been admitted. In *St. L., V. & T. H. R. R. Co.* v. *Haller,* 82 Ill. 208, no evidence of this character seems to have been offered, nor does its admissibility seem to have been in question, but it was said, that what the property would sell for before and after the road was constructed, would be one of the modes of ascertaining the damages, if the price was shown to have been reduced by the building of the road. And, "if there was no other property of the same value or description in the place which had been sold, then other modes would have to be resorted to,

than the proof of the sale of such property before and after the damage was done."

*White* v. *Hermann*, 51 Ill. .243, was a suit to recover damages for an alleged breach of a contract for the sale of a tract of land, and the value of the land embraced in the contract was one of the matters in issue. As bearing upon that issue, it was said that no objection could be seen to the admission of proof of the value of other property similarly situated, at or near the date of the contract, or even of property of a different quality in its immediate vicinity, leaving the jury to determine the difference of value, and that if any witness knew of similar property having been sold about the time of the contract, he might testify to that fact. *C. & N. W. Ry. Co.* v. *C. & E. R. R. Co.* 112 Ill. 589, was a proceeding by one railroad company to condemn land owned and used by another company for transferring freight from its tracks to Lake Michigan. Proof was made of several sales of property in the vicinity designated by the witnesses as dock property. The judgment was reversed on other grounds, and the propriety of this evidence was not directly passed upon, but the court, in discussing the mode of estimating the compensation to be paid for property which, not being in the market or subject to sale, has, properly speaking, no market value, said: "While, in the nature of things, there can be no market value of a piece of property, by being used in connection with and as a part of some extensive business or enterprise, its value must be determined by the uses to which it is applied. While in such cases, the market value of neighboring lands differently circumstanced may be looked to as throwing some light upon the question, yet that alone would fall far short of furnishing a true or adequate test of the value of the property."

The other decisions to which our attention is called do not seem to have any bearing upon the question of the admissibility of evidence of sales of other property. In *Kiernan* v. *Chi., S. F. & C. Ry. Co.* 123 Ill. 188, evidence as to how far

the selling value of other farms in the county crossed by railroads had been affected thereby was held inadmissible.    In *C. & E. R. R. Co.* v. *Blake,* 116 Ill. 163, the decision was that real estate brokers who testify that they are acquainted with the value of real estate in the neighborhood of the land sought to be condemned, are competent witnesses as to the value of the same, even though their knowledge of values in the locality is not satisfactorily shown to be based on actual sales.    The cases of *Johnson* v. *F. & M. R. Ry. Co.* 111 Ill. 413, *Green* v. *City of Chicago,* 97 id. 370, *G. & S. W. R. R. Co.* v. *Haslam,* 73 id. 494, and *L. B. & M. R. R. Co.* v. *Winslow,* 66 id. 219, all relate to the question of the admissibility of opinion evidence as to values, and do not involve the question of the admissibility of evidence of sales of other property.

The theory upon which evidence of sales of other similar property in the neighborhood, at about the same time, is held to be admissible is, that it tends to show the fair market value of the property sought to be condemned.    And it can not be doubted that such sales, when made in a free and open market, where a fair opportunity for competition has existed, become material and often very important factors in determining the value of the particular property in question. · But it seems very clear that to have that tendency, they must have been made under circumstances where they are not compulsory, and where the vendor is not compelled to sell at all events, but is at liberty to invite competition among those desiring to become purchasers.    Accordingly among the various decisions in this or other States to which our attention has been called or which our own researches have discovered, we find none in which the price paid at a forced or compulsory sale has been admitted as competent evidence of value.    On the other hand, in *Dietrichs* v. *L. & N. W. R. R. Co.* 12 Neb. 225, evidence of the price paid at an administrator's sale for the very lots sought to be condemned was held to be incompetent.

In discussing this subject, Mr. Lewis, in his Treatise on the Law of Eminent Domain, says : "What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such price as may be fixed by the tribunal appointed by law. In most cases, the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons, such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise." Lewis on Eminent Domain, sec. 447.

The text of the learned author here quoted seems to be well supported by the authorities. In *Kelliher* v. *Miller*, 97 Mass. 71, which was a suit brought to assess damages to land caused by the building and maintenance of a mill-dam and the consequent overflow of the land with water, it was held that evidence of the amount paid for flowing other land was inadmissible, the court remarking that the case did not fall within the analogy of those cases which permit the value of adjacent and similarly situated parcels of land, as indicated by the prices for which they have been sold, to be shown where the question on trial is the value of the land. So, in *Fall River Print Works* v. *Fall River*, 110 Mass. 428, which was a proceeding for the assessment of damages as compensation for land taken for a highway, it was held that evidence of amounts paid for other land taken for the purposes of the same street was a mere settlement of damages, and not an ordinary sale and purchase of an estate, and was therefore incompetent and improperly admitted. *Cobb* v. *City of Boston*, 112 Mass. 181,

was a proceeding for the assessment of damages for lands
taken by the city for a certain public improvement, and it
was held that evidence of the sum paid by the city for other
land similarly situated, by agreement with its owner, was in-
admissible as evidence of the market value of the land taken.
On this point the court said : "The defendant offered to prove,
as evidence of market value, the sum paid by the city, by
agreement with the owner, for another lot similarly situated.
A price so fixed by compromise, when there can be no other
purchaser, and the seller has no option to refuse to sell, and
can only elect between the acceptance of the price offered and
the delay, uncertainty and trouble of legal proceedings for an
assessment, is not a reasonable test of market value. It is
in no sense a sale in the market." See also, *Presbrey* v. *O. C.
& N. Ry. Co.* 103 Mass. 1; *Donovan* v. *City of Springfield,* 125
id. 371; *Tyler* v. *Mather,* 9 Gray, 183.

The same question arose in *Howard* v. *City of Providence,*
6 R. I. 514. That was a proceeding for the assessment of
damages for land taken and injured by laying out a street,
and for the purpose of proving the amount of damages to the
particular land owner whose case was on trial, evidence was
offered of the amounts paid by the city to other property
owners in settlement of their appeals from awards of damages
for adjoining lands taken for the street, and was excluded as
incompetent. On affirming that ruling, the court said : "What
the city paid other parties in compromise of suits pending on
appeal for land damages, although the lands might be simi-
larly situated with lands of the plaintiff's taken by the city,
was certainly not evidence of the market value of the land, or
of any substantial damage suffered by the plaintiff. Upon
grounds of public policy, offers made in compromise of suits,
pending litigation, are not to be used in evidence against the
party making them. We do not see that such evidence ought
to be any guide to the jury in estimating damages. When a
party buys his peace, or compromises a pending suit, many

considerations may influence him; the trouble, vexation, and costs of a lawsuit, payment of counsel, time expended in attending litigation, and other matters, may induce him, for the avoiding of trouble, to pay in compromise far more than the value of the thing in controversy."

In *City of Springfield* v. *Schmook*, 68 Mo. 394, it was held that it was improper, in such cases, to prove what other persons had been allowed for their property, in order to establish the amount of the compensation to which the party was entitled by comparison, the court saying: "The assessment of damages in other cases may have proceeded upon incorrect principles, or the amount paid may have been the result of contract, or in excess of the true value. Such a mode of inquiry was improper because it furnished no accurate standard for estimating the defendant's damages, and was likely to lead to the introduction of many collateral issues." In *B. & A. R. R. Co.* v. *McLaren*, 47 Ga. 546, it was held to be error to admit evidence of what another railroad company had paid the party whose damages were being assessed for running its railroad through her land. See also, *King* v. *I. M. R. R. Co.* 34 Iowa, 458; *Chapin* v. *B. & P. R. R. Co.* 6 Cush. 422; *Amoskeog Manuf. Co.* v. *Worcester*, 60 N. H. 522.

We are referred to no decision in this State in which the opposite view as to the admissibility of evidence of the character of that now under consideration has been taken. In fact, so far as we are aware, the question has never been passed upon by this court, and we are therefore at liberty to adopt the rule which seems to us to be most fully supported by reason and authority. Acting upon that principle, we are disposed to concur in the rule supported by the authorities above cited, and to hold that the evidence of the prices paid by the railroad company to other property owners for right of way along its line was incompetent and was improperly admitted.

Upon the question of the damages to the part of the defendant's premises not taken, the defendant produced some six or

seven witnesses whose testimony tended to show an amount of damages to the defendant's gas works by taking that portion of the premises sought to be condemned very largely in excess of the amount awarded by the jury. Most if not all of these witnesses appear to have had large experience in the construction, operation and management of gas works, and their values, and in relation to the areas necessary to their proper and successful operation. The petitioner, in rebuttal, examined three architects, who, after having examined the premises, express the opinion that the building of the railroad will have no material effect upon the defendant's buildings and plant. Upon this evidence, the court gave to the jury the following instruction:

"You are instructed that you are the judges of the credibility of the witnesses, and of the value of their testimony in relation to the compensation and damage; and if, after full consideration of all the testimony in the case in connection with your own inspection of the premises, you conclude that your own inspection of the premises is a more reliable basis for the estimate and assessment of compensation and damages, then you have a right, under the law, so to do, but you should not arbitrarily and without reason reject any of the testimony."

This instruction clearly authorized the jury to base their estimate of compensation and damages solely upon their own inspection of the premises, provided only they were of opinion that such inspection furnished a more reliable basis for an assessment than did the evidence of the witnesses. While it required them to consider the evidence, and directed them not to reject any of it arbitrarily and without reason, it gave to them a clear intimation that, if in their opinion, their inspection of the premises furnished a more reliable basis for an estimate of damages, such conclusion would of itself furnish a sufficient reason for wholly disregarding the testimony of the witnesses. Such, in our opinion, is not the law.

It has been frequently held by this court that the results of the personal view of the premises by the jury in condemnation cases are in the nature of evidence, and may be taken into consideration by them in passing upon the testimony of the witnesses; and that where the evidence is conflicting, they may be resorted by the jury as bearing upon the weight to be given to the variant and conflicting estimates given by the various witnesses, so that, if the verdict of the jury is supported by the evidence, it will not be disturbed simply because it is contrary to what appears to be the preponderance of the testimony. The case in which this view is stated most strongly of any to which our attention has been called is *Kiernan* v. *C., S. F. & C. Ry. Co.* 123 Ill. 188. There an instruction was approved which told the jury, in substance, that the result of their personal view of the premises was evidence properly to be taken into consideration in making up their verdict, and that if they believed, from the whole evidence, that they had, from personal examination of the premises, arrived at a more accurate judgment and determination as to the value of the premises sought to be taken, and of the amount of damages, than was shown by evidence in open court, then and in that case they might, upon the evidence, rightfully fix the value of the land taken, and the amount of damage, at the amount so approved by their judgment so formed from personal examination of the premises, as a jury, even though it might differ from the amount testified to, and from the weight of testimony given by witnesses in open court. It will be observed that in that instruction no license was given to the jury to disregard the evidence and base their estimate of damages upon their personal examination of the premises alone, even though they might be of the opinion that such examination furnished the best basis for an assessment, but they were instructed to consider the results of their view of the premises in connection with the evidence, and report the assessment which should

thus appear to them to be just, although it might differ from the amount sustained by the preponderance of the testimony of the witnesses. The instruction in the present case, however, went further and authorized the jury to first determine whether their own inspection of the premises furnished the more reliable basis for an assessment of damages; and that question being settled in the affirmative, it justified their acting upon that basis alone, and making their assessment accordingly.

In the more recent case of *A. T. & S. F. R. R. Co.* v. *Schneider*, 127 Ill. 144, we held that, while the personal view by the jury in condemnation cases is in the nature of evidence, yet the jury may not ignore all the evidence and fix the compensation and damages directly contrary thereto, and that it is only where the evidence is conflicting that the jury may draw their own conclusions from a personal view. Even then, an assessment beyond the maximum or less than the minimum fixed by the testimony will not be sustained. The verdict must be supported by the evidence, and can in no case rest solely upon the personal examination of the premises by the jury, however well convinced they may be that their examination furnishes a more reliable basis for an assessment of damages than the testimony of the witnesses. In support of this view see, *Washburn* v. *M. & L. W. R. R. Co.* 59 Wis. 364. We are of the opinion that the instruction given in this case was erroneous.

A number of other questions are presented by counsel in their briefs, but as the errors already pointed out necessitate a reversal of the judgment, we do not feel called upon to consider or discuss them. Without expressing any opinion as to the other questions suggested, we find ourselves compelled, for the errors above mentioned, to order that the judgment be reversed and the cause remanded for a new trial.

*Judgment reversed.*