## Chicago, B. & Q. R. R. Co. v. William Burton.

1. CONTRIBUTORY NEGLIGENCE—*A Question of Fact.*—The question as to whether the plaintiff in an action for personal injuries was guilty of contributory negligence, is one for the determination of a jury.

2. JURY—*Viewing the Premises.*—The practice of taking the jury out to view the locality of an accident in personal injury cases and allowing them to talk among themselves about the case, although done by the consent of counsel, is not to be commended.

3. INSTRUCTIONS—*Exercise of Care and Diligence Not a Question of Law.*—An instruction that a failure to use ordinary care and diligence in looking and listening for a train at a railroad crossing, is in law a failure to use ordinary care for one's own safety, is erroneous, as the question is one of fact and not of law.

4. RAILROADS—*Care and Diligence in Crossing Tracks.*—If, notwithstanding a failure to use ordinary care to look or listen for trains when about to cross a railroad track, there is evidence tending to prove other facts which might rationally be considered as reasonably excusing such failure, and to show that upon the whole case there was no lack of such care as ordinarily careful and prudent men use for their own safety under like circumstances, the question of care or negligence must be submitted to the jury.

5. SPECIAL INTERROGATORIES—*Submitted by the Court.*—The court in submitting special interrogatories to the jury *sua sponte* is not required by the statute to submit them to counsel. The statute relates only to questions proposed by the parties respectively.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of McDonough County; the Hon. CYRUS EPLER, Judge, presiding. Heard in this court at the November term, 1892, and affirmed. Opinion filed December 6, 1893.

The opinion states the case.

APPELLANT'S BRIEF, SHERMAN & TUNNICLIFF, ATTORNEYS; O. F. PRICE AND D. G. TUNNICLIFF, OF COUNSEL.

If there was want of ordinary care by appellee, there can be no recovery unless appellant is guilty of willful or wanton acts. Chicago, B. & Q. R. R. Co. v. Rogers, 17 Brad. 638; Rogers v. C., B. & Q. R. R. Co., 117 Ill. 115; Chicago, B. & Q. R. R. Co. v. Damerell, 81 Ill. 450.

And burden of proof is on plaintiff to show he used due care in approaching and going upon the crossing, and at the time of the accident. Chicago, B. & Q. R. R. Co. v. Hazzard, 26 Ill. 373.

In applying the measure of slight and gross negligence to the acts of the respective parties charged with negligence, it must be remembered that the term "negligence" is itself relative, and its application depends on the situation of the parties and the degree of care and vigilance which the circumstances reasonably impose. Chicago, B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; Cooley on Torts, 630.

A traveler along a public highway which crosses the track of a railroad, is held to the exercise of proper precaution to avoid injury upon the crossing as well as the company. In his approach to such crossing, it is incumbent on him to exercise care and caution by looking and listening for any train that may be approaching, so as to prevent the danger of collision. Chicago & A. R. R. Co. v. Jacobs, 63 Ill. 178; Chicago & A. R. R. Co. v. Gretzner, 46 Ill. 74; Chicago, N. W. R. R. Co. v. Hatch, 79 Ill. 137; Chicago, B. & Q. R. R. Co. v. Van Patten, 74 Ill. 91; Illinois C. R. R. Co. v. Goddard, 72 Ill. 567.

And it is the general rule that it is deemed culpable negligence to cross the track of a railroad without looking in every direction that the rails run, to make sure that the road is clear, as also to attempt to drive a team across the track of a railroad in full view of a locomotive. Chicago, R. I. & P. R. R. Co. v. Bell, 70 Ill. 102; Chicago, B. & Q. R. R. Co. v. Florens, 32 Ill. App. 365; St. Louis, A. & T. H. R. R. Co. v. Manly, 57 Ill. 300; Illinois C. R. R. Co. v. Godfrey, 71 Ill. 500; Chicago & N. W. Ry. Co. v. Sweeney, 52 Ill. 325; Chicago, B. & Q. R. R. Co. v. Van Patten, 74 Ill. 91.

APPELLEE'S BRIEF, NEECE & SON, ATTORNEYS.

The defendant was guilty of gross negligence in running its train at a rate of speed prohibited by ordinance and dangerous to public safety at time and place when plaintiff was injured. Wabash Ry. Co. v. Henks, 91 Ill. 406; Chicago & A. R. R. Co. v. Becker, 84 Ill. 483; T. P. & W. R. R. Co. v. Deacon, 63 Ill. 91; Chicago & A. R. R. Co. v. Gregory, 58 Ill. 226; P. C. & St. L. R. W. Co. v. Knutson, Admx., 69 Ill. 103.

And the same is true irrespective of any ordinance. Wabash Ry. Co. v. Henks, 91 Ill. 406; Chicago & A. R. R. Co. v. Engle, 84 Ill. 397.

Running a train through a city and over crossings at a high rate of speed without ringing the bell or sounding whistle is negligence of the grossest kind and amounts to willfulness or wantonness. Wabash Ry. Co. v. Henks, 91 Ill. 406; I. & St. L. R. R. Co. v. Galbreath, 63 Ill. 436; Chicago & A. R. R. Co. v. Becker, Admr., 84 Ill. 483; P. C. & St. L. R. W. Co. v. Knutson, Admx., 69 Ill. 103.

The evidence of failure to sound the bell or whistle in this case is not negative. R. R. I. & St. L. R. R. Co. v. Hillmer, 72 Ill. 235.

Persons using streets in a city have a right to suppose that trains will be run over crossings with great caution and with due regard to the safety of the public. I. & St. L. Ry. Co. v. Stables, 62 Ill. 313; 28 Ill. App. 102.

Negligence of either party is question of .fact for the

jury. Chicago & A. R. R. Co. v. Pennell, 94 Ill. 448; Myers v. I. & St. L. Ry. Co., 113 Ill. 386; I. & St. L. R. R. Co. v. Morganstern, 106 Ill. 216; Pennsylvania Co. v. Conlan, 101 Ill. 93.

The jury are judges of the relative degrees of negligence. Chicago B. & Q. R. R. Co. v. Avery, 8 Brad. 135.

Any person of ordinary intelligence may testify as to the speed of a train. It does not require an expert or a train man. Chicago, B. & Q. R. R. Co. v. Johnson, 103 Ill. 512.

Mr. Justice Pleasants delivered the opinion of the Court.

This was an action on the case for injury to the person and to a horse and wagon of appellee, sustained by their collision with a freight train of appellant on the crossing by its track of West Jackson street in the city of Macomb, about half-past three o'clock in the afternoon of January 14, 1892.

The street runs due east and west, and the railroad track a little north of east and south of west. It was a cold, clear afternoon. Appellee was driving west and going to his home, about five miles from the city. The last house on Jackson street, between him and the track, was about 320 feet east of the crossing. After passing that house, the nearer he came to the crossing the farther up the track, east, he could see, there being nothing to obstruct his view for twelve or thirteen hundred feet. The horses and most of the wagon had passed over the rails when the train, coming almost directly behind him from the east, struck it and caused the injuries complained of.

The first count of the declaration charged generally that defendant, by its servants, drove its train so negligently, that because of such negligence the engine and train ran against and struck his wagon; the second, that no signal of its coming, by bell or whistle, was given, as required by the statute; and the third, that the train was driven at a much higher rate of speed than was allowed and limited by the city ordinance. Each averred that the negligence of the

defendant's servants, as stated, was the cause of the injury, and that plaintiff exercised all due care on his part. On the trial upon the general issue the jury returned a general verdict for the plaintiff for $2,000, with numerous special findings which we think not inconsistent with it. A new trial was refused and judgment rendered on the verdict, from which this appeal is prosecuted.

The main if not the only question of fact in the case seems to have been that of contributory negligence, and upon that question it may be conceded to have been a close one for the determination of which a jury is the appropriate, and if not misled by error of the court, final tribunal.

Negligence on the part of defendant in respect of the rate of speed is not denied. The ordinance limited it for freight trains to six miles per hour. It was admitted by the train hands to have actually been from ten to fifteen, while many disinterested witnesses put it at from twenty to thirty or more. It was a light train, consisting of seven freights and one way car, and was over two hours behind its time, but the train men said they were not trying to make it up.

As to the ringing of the bell, there was the usual conflict. The train men, with the exception of one who spoke from his knowledge of what is generally the case, were positive that it was ringing continuously from the time they pulled out from the depot, more than eighty rods from the crossing, until the collision occurred. Others, having no relation to the company, denied it as positively, from particular notice taken at the time, and others still said they did not hear it and thought they would have heard it if it had been ringing. And so that was a question fairly presented to the jury.

The charge of contributory negligence on the part of the plaintiff rested largely on his own admission that his senses of sight and hearing were at least ordinarily good; that he had passed over this crossing as often as once a week for sixteen years and was well acquainted with its character and surroundings, and that if he had looked back from either of several points after passing the last house on the

north side of the street before reaching the crossing he could have seen a coming train in time to stop his team and thus avoid the collision.

But he further testified that after passing that house far enough to see up the track fifteen or twenty rods, he did look but saw no train; that when about twenty feet from the crossing he looked again and saw none; that when his horse's feet were about on the track he looked again and then first saw the train, some two hundred feet behind him; that it being then impossible to back out or turn around, his only chance to escape was by driving on; that he whipped up and made every effort to cross and would have succeeded if the train had not been running at a rate of more than twenty miles an hour.  His statement that he looked back and up the track twice before reaching it was not corroborated.  Several witnesses who saw both him and the train and expected he would stop or get across ahead of it, say that when they observed him he did not look back but straight ahead, apparently attending only to his team; but his turning to look, if he did so turn, was but momentary; the witnesses could not well have observed both him and the train constantly, and doubtless he was generally looking forward.  He had always known it as a dangerous place, where trains were liable to pass at any time, and must have known whether he looked on this occasion as he stated. The apparent frankness of his admissions against himself seem to entitle him to credit.

Yet it is certainly difficult to account for his failure, if he did fail, to see the train from a point about twenty feet east of the crossing.  He says he could have seen it if it had been there, but that he did look and did not see it.  The jury may have believed, as do we, that he was mistaken about the distance, and was farther from the crossing when he looked the second time than he thought.  If it was fifty or sixty feet, a fast train, then out of his sight, might have come in sight and been dangerously near when he got to the crossing.  One witness says, "she came a flying," and Mrs. Garrett, living in the last house west on Jackson

C., B. & Q. R. R. Co. v. Burton.

street, who saw him as he was about going on the track and stepped back to avoid seeing the accident she thought inevitable, says: "The train came faster than usual; heard no bell when I heard wagon start up; it wasn't making the noise that trains of that length usually make, for I never knew a freight train to slide by so easily as that did."

Then if the jury believed from all the evidence that he looked, when fifty, seventy-five or a hundred feet from the crossing, and saw no sign of a coming train, it was for them to judge whether ordinary care, in view of the facts that the ordinance limited freight trains to a rate of speed not exceeding six miles per hour, and the statute imperatively commanded signals of its approach to be given by bell or whistle, required that he should look again and in time to stop his team, before going upon the track, unless in the meantime he heard the sound of its coming. We apprehend that ordinarily careful men approaching a railroad crossing do not concern themselves with special looking and listening for trains until they are near enough to it to question whether they shall go on and cross without stopping; and if, when so near, they satisfy themselves, from the absence of all sounds and appearances indicating it, that there is no train approaching in dangerous proximity, they go on. They often attempt to cross ahead of a train known to be approaching, because they reasonably conclude from the circumstances that it is not imprudent to do so. It depends on their own distance and that of the train from the crossing, and the rate of speed at which each is or ought to be going. There may be a miscalculation and consequent disaster, but if the train men are at fault it is a question for the jury whether the party making the attempt is also guilty of contributory negligence amounting to a want of ordinary care. And in such cases the statements of witnesses of their impressions as to time and distances, where seconds and feet are important, are by no means conclusive.

The jury should take, and be by the court presumed to have taken, a reasonable view of such statements in consider-

ation of the impossibility of exact accuracy in those particulars, notwithstanding the entire honesty of the witnesses. For that reason, defendant in this case introduced photographic views of the *locus* from different points, to make intelligible and clear the oral testimony given. And not satisfied with the aid thus afforded for the understanding of such testimony, asked, at its close, that the jury be permitted to go upon the ground and view it to their own satisfaction, to which plaintiff consented, and the trial judge, for that reason, while stating that such a proceeding was not approved by the Supreme Court, allowed. And still further, upon the judge's charge to them not to talk among themselves about the case, and the attorneys on each side stating to him that they were willing to have them talk about it while looking at the crossing, he said to them, " Very well, if counsel consent for you to do so, you may as far as I am concerned," and thereupon they went to the crossing in charge of a sworn officer and viewed and examined the premises.

It is said this was done, not to enable or authorize them to obtain ocular evidence in the case, but only the better to understand and appreciate the oral testimony and photographic views introduced in evidence. Authorities are cited to support the distinction stated; but we can not regard it as of any practical force or effect, in such a case as this. The jury had important evidence before them, not known to the trial court or to this court, and were permitted to discuss it before they retired to consider their verdict or heard the arguments of counsel or instructions of the court; which of necessity must have influenced their findings. The actual and legal effect must, therefore, be the same as that of a bill of exceptions, which fails to state that it contains all the evidence produced on the trial, and the presumption will be that there was evidence, not preserved in the record, which warranted the finding. And for the same reason a court of review may be unable to pass intelligently or justly upon rulings of the trial court in question.

Six instructions were given for the plaintiff as asked, besides the one relating to the form of the verdict. In the

fourth, a part of the hypothesis stated is, that plaintiff was using ordinary care "in going upon and crossing" the track to avoid the accident, which, it is said, excluded the question of due care in "approaching" it. We think that is not the true or natural construction of the language. L. S. & M. S. Ry. Co. v. Johnson, 135 Ill. 652. And it is quite certain that the jury did not exclude that question. Their first special finding was an affirmative answer to the interrogatory put by the court, of its own motion: "Did the plaintiff use ordinary care in approaching and going upon defendant's track at the time of the accident, in view of all the evidence in the case?" That finding also conclusively answers the only other objection urged to plaintiff's instructions, which is, that in the fifth, the jury are told that if the injury was caused by the negligence of defendant as charged, and "without fault or negligence on his part," they should find for the plaintiff. The suggestion is, that it authorized such a verdict if the injury occurred without gross negligence on his part. Standing alone it would be more apt to be understood as requiring that it should have been shown to have occurred without any kind or degree of fault on his part, and so be favorable to the defendant. But it did not stand alone. The next preceding instruction required them to find that "he himself was using ordinary care and caution in going upon and crossing said track to avoid accident." Without fault or negligence must, therefore, have been understood to mean without any lack of ordinary care and caution; and such, expressly, was the finding.

Twenty-five instructions were asked for defendant, of which seventeen were given and eight refused. The refusal to give the latter and each of them is urged as error.

The one numbered 17 was substantially and clearly given in Nos. 7, 9, 10, 12, 13 and 14 for defendant, and in No. 4 for plaintiff.

No. 18 related mostly to wanton, willful injury, of which there was no charge or claim. So far as it related to gross carelessness, it was inaccurate and misleading. It would not follow, as matter of law, from the fact that defendant's

servants in charge of the train "did not see plaintiff on the track or in the attempt to cross it, in time to have stopped it and prevented the collision," that "they would not be guilty of gross negligence." Pennsylvania Co. v. Frana, 112 Ill. 398.

We do not assent to the proposition as stated absolutely in No. 19 (C. C. C. & St. L. R. R. Co. v. Baddeley, opinion by Mr. Justice Wall, recently filed); but all that can properly be claimed for it was given in Nos. 13 and 14, which we do not fully approve.

No. 20 is more liable to the same objection. It tells the jury that if, from the evidence, they believed certain other propositions of fact stated (and which, if proved, tended to show that plaintiff could and should have seen and heard the coming train in time to stop his team and avoid it) and "that before he drove upon the track, and while he was at a reasonably safe distance from said track, by using ordinary care and diligence in looking and listening, he could have seen the approaching train and avoided the injury, then their verdict must be for defendant, and this would be the case even if the defendant's servants may have been driving the engine and train at a greater speed than six miles an hour, or had even failed to ring a bell, of at least thirty pounds weight, or sound the locomotive whistle."

This assumed that in the case supposed there were no circumstances that did or could excuse a failure to use ordinary care and diligence in looking and listening—an assumption clearly disapproved in C. & N. W. R. R. Co. v. Dunleavy, 129 Ill. 132 (148). In effect it told the jury that a failure to use ordinary care and diligence in looking and listening, under the circumstances supposed and stated, irrespective of others if others there were, was in law a failure to use ordinary care for his own safety. Whether it was, was not a question of law at all, but one " to be determined as a question of fact under all the attending circumstances," as was said in C. & A. R. R. Co. v. Adler, 129 Ill. 340. It was therefore a question for the jury and could not properly be taken from them. Had all the attending circum-

stances bearing upon it been brought to their attention by the instruction asked, they should still have been told that these were to be considered by them in determining for themselves the question whether plaintiff had failed to use ordinary care for his own safety. But they were not all so brought to their attention. It wholly ignored the evidence tending to prove that plaintiff did look and listen twice, as herein above stated; that the train was driven at a speed four or five times as great as six miles an hour, not only without giving the required signal, but with far less noise of its own machinery and motion than was usual, and that neither of the train hands saw him or his team or kept any lookout for such on that side, until they were on or just coming on the track. It was for the jury to determine whether these circumstances were proved, and if so, whether ordinary care, in view of them, required the plaintiff to look or listen for the train farther than he did. In the Dunleavy case, *supra*, the Supreme Court held the special findings that the deceased could have seen the train in time to avoid the injury if he had looked, and heard it if his attention had been concentrated in that direction, not necessarily inconsistent with the finding that he used ordinary care for his own safety. In this case there was no special finding more inconsistent with the finding that plaintiff used such care. Had the instruction No. 20 been given, they might have felt constrained by it to find differently. For the reasons stated it was properly refused. No. 24 is so nearly the same in substance and form that for the same reasons it also was rightly refused. No. 21 was clearly bad. It made negligence a question of law and invaded the province of the jury. Nos. 22 and 23, which are substantially alike, were given in No. 11, notwithstanding the rule declared in Frana's case, *supra*.

We perceive no material error in the matter of instructions, of which appellant can well complain. At the request of defendant the court submitted eleven questions for special finding, and refused so to submit a twelfth which was as follows:

" If plaintiff had used ordinary care in looking or listen-

ing for the approach of said train in the direction from which it came, when he was at a safe distance from said crossing, could he have seen the same in time to stop his team and avoid the accident?"

In the light of the Dunleavy case it may well be doubted if any one of the eleven was of the kind intended to be allowed by the statute. No answer responsive to either would have established a controlling or material fact in the case, none that would have been necessarily inconsistent with a finding either way of any ultimate fact in issue. But since no question is made upon their submission there is no occasion for any consideration of them.

The point on the refusal to submit the twelfth is sufficiently answered by the reasoning and ruling in that case, and what has been here said upon the refusal of the instruction numbered twenty. Had the special interrogatory been submitted and answered in the affirmative, such answer would not have " constituted a finding inconsistent with the general verdict."

The question in that case was: " What precaution did the deceased take to inform himself of the approach of the train which caused the injury?" Of the refusal to submit it, the court said: " What the deceased did to inform himself of the approach of the train was material only as tending to show reasonable care on his part or the want of it. His acts in that behalf, then, whatever they may have been, were facts which were merely evidentiary in their nature, and while they doubtless would have had a tendency to prove reasonable care or the contrary, there were none of them, so far as the evidence shows, which would have been conclusive of that question. The question, then, as submitted by defendants' counsel, sought to obtain a finding as to mere probative facts, and the court therefore properly refused to require the jury to answer it." The discussion by the court of the three following questions asked to be submitted, pp. 147–8, throws further light, if any were needed, on the point here under consideration, and establishes, or confirms the rule already established, that not

only is a failure to use "ordinary care in (by) looking or listening" inconclusive of the question of due care or negligence, but so also is an entire failure to look or listen. The law is that if, notwithstanding a failure to use ordinary or any care or effort to look or listen, there is evidence tending to prove other facts which might rationally be considered as excusing such failure, and to show that upon the whole case there was no lack on the part of the decedent or plaintiff of such care as ordinarily careful and prudent men would use for their own safety under circumstances in all material respects the like, the question of care and negligence must be submitted to the jury. This is settled by the cases of Johnson, Alder and Dunleavy, all above cited, and by C., St. L. & P. R. R. Co. v. Hutchinson, 120 Ill. 593; Pennsylvania Co. v. Frana, 112 Ill. 398, and cases cited in the several opinions therein.

We are satisfied that such was the case here. The jury found that plaintiff did use ordinary care, and whatever might be our opinion of the propriety of such finding, it is not our province to overrule it on the evidence. The errors of the court, if any there were, in our opinion favored the defendant and not the plaintiff.

Complaint is made that it propounded, of its own motion and without submitting them to appellant's counsel before the final argument was begun, certain interrogatories for special findings, which, from their form and order, suggested answers favorable to appellee. We see no ground for it. They were brief, clear, single and pointedly called for answers to the ultimate questions of fact raised by the pleadings, and were therefore no more suggestive of the answers than were the pleadings. The court was not required by the statute to submit them to counsel. The provision referred relates only to questions proposed by the parties respectively. Perceiving no material error in the record, the judgment of the Circuit Court will be affirmed.