## George A. Seaverns v. George Lischinski.

1. VERDICTS—*Challenging for Insufficiency of the Evidence.*—In order to successfully challenge a verdict, because of the insufficiency of the evidence to sustain it, the bill of exceptions must contain all the evidence, and must purport to do so.

2. BILL OF EXCEPTIONS—*Physical Objects.*—Where a physical object is admitted in evidence at the trial, but is too bulky and cumbersome to be incorporated into or transmitted with the bill of exceptions, it must contain a complete description of such object.

3. SAME—*When it Does Not Purport to. Contain All the Evidence.*— If a bill of exceptions does not state that it contains all the evidence, a court of review will, where the assigned errors question the sufficiency

of the evidence to sustain the verdict, presume that the decision of the lower court was justified by evidence not shown, if that shown is not sufficient.

**Action in Case,** for personal injuries. Trial in the Superior Court of Cook County: the Hon. Farlin Q. Ball, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in the Branch Appellate Court at the October term, 1898. Affirmed. Opinion filed May 2, 1899.

John A. Post and O. W. Dynes, attorneys for appellant; Charles B. Stafford, of counsel.

Fred H. Atwood and Frank B. Pease, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the court.

The appellant (defendant below) was the operator of a grain elevator, and the appellee was a laborer in his employ, who, among other things, assisted in moving railroad cars into and out of the elevator.

The cars were hauled to and forth by means of a capstan, with ropes, tackle, etc., operated by steam power. To haul cars out of the elevator upon their appropriate tracks and switches, a sling six or eight feet long, made of rope, was fastened to a timber and the railroad cross ties, at a distance from the capstan of about 120 feet down the track in the direction the cars were to be hauled, and a snatch-block or pulley was hooked to the sling. A rope having one end at the capstan and the other end hitched to the car, passed through the pulley, and being operated from the capstan, drew the cars in the direction of the pulley and sling.

On the day in question, five loaded cars were being hauled out of the elevator in the manner indicated. At a particular point the five cars so being hauled, came up to another five cars previously hauled out of the elevator, and the strain thus becoming too great, caused the sling rope to break. The tension of the hauling rope thus being suddenly relieved, caused the pulley block to fly back down the track in the direction of the cars and

strike appellee upon his legs. Both his legs were broken and greatly bruised, and the free use of his left leg is permanently impaired.

The jury returned a verdict of $5,000, from which $2,250 was remitted and judgment was entered for $2,750.

The theory of the declaration is based upon the master's duty to furnish reasonably safe appliances for the servant to work with and to keep them in reasonably safe condition and repair, and the neglect therein by the master in respect of the sling rope which broke.

The broken rope was introduced in evidence by appellant without objection, but is not attached to the bill of exceptions or in any manner brought to this court, and the point is made that the rope not being before us, there was important evidence before the jury and trial judge that we are unable to see and consider, which may have been of a conclusive character.

And the case of C., B. & Q. R. R. Co. v. Burton, 53 Ill. App. 69, is cited. That was a suit to recover for injuries to the person and horse and wagon of the plaintiff from being run into at a railroad crossing by a passing train of cars. The jury were permitted, upon the request of the railroad company and with the consent of the plaintiff, to go in a body and view the crossing there in question, and the Appellate Court of the Third District, speaking through Mr. Justice Pleasants, held that the jury having had important evidence before them, not preserved in the bill of exceptions, the presumption was that the evidence not preserved warranted the finding. There are other cases that hold the same way. That of N. C. St. R. R. Co. v. Eldridge, 51 Ill. App. 430 (this district), was a suit for personal injuries for an accident to the appellee by being caused to trip or stumble on account of a bolt or something that protruded above the floor of a street car, and by consent of both parties the jury inspected the car, itself, which it was agreed was at the time of inspecting it in the same condition as at the time of the accident. It is said in the opinion of the court:

"What they (the jury) saw, we have no means of knowing and can not review. Whatever, if anything, was lacking in the other evidence to convict the appellant of negligence we must presume was supplied by such inspection. * * * Their (the jury's) finding rests in part at least upon evidence derived from a personal inspection of the bolt in the car itself, which is not before us, but binds us."

The case of C. & B. Packing Co. v. City of Chicago, 111 Ill. 651, was an action on the case for damages to property in consequence of the construction of a viaduct. There, an instruction, " that as the parties to this action by mutual consent allowed the jury to view the premises in question and the viaduct, they have the right in finding their verdict to take in account such facts as they learned by viewing the property as to whether," etc., was held to be good, and numerous cases in support of it were cited.

Cases subsequent to that one, but of a similar kind to those there cited, are Peoria Gas Light & C. Co. v. Peoria T. Ry. Co., 146 Ill. 372, and Sanitary District v. Cullerton, 147 Ill. 385, in both of which the effect of evidence in the nature of a view or inspection warranted by the statute, but incapable of being brought into a bill of exceptions, is considered.

All of such cases were, however, instances of an inspection by the jury, made out of court.

This is an instance of an inspection of a material object, admitted in evidence and submitted to the jury, in court.

The only reason given by appellant for not making the rope a part of the bill of exceptions, is that "it is too bulky." He makes no argument and cites no authority upon the effect of its absence, and meets the point made by appellee with nothing but a negative argument that there is nothing in evidence to indicate that the rope was not suited to the purpose for which it was used.

It has been the rule in this State, from the earliest, that in order for an appellant to successfully challenge a verdict, because of the insufficiency of the evidence to sustain it, the bill of exceptions must contain all the evidence, and must purport to do so. Clark v. Willis, 16 Ill. 61, where earlier

cases are cited; Garrity v. Hamburger Co., 136 Ill. 499;
Legnard v. Rhoades, 156 Ill. 431; James v. Dexter, 113 Ill.
654, and others too numerous to cite.

If there be a rule as to what will take the place, in a bill
of exceptions, of a physical object, admitted in evidence at
the trial, but too bulky and cumbersome to be incorporated
into, or transmitted with, the bill, we have never seen it
stated.    It would seem that nothing less than a complete
description of the object would suffice, and until we learn
better, we will hold that such a description is enough.   See
Doud v. Guthrie, 13 Ill. App. 653, on page 661.

It has been our observation, that the most skilled practi-
tioners avoid the introduction of evidence of a merely ma-
terial or physical kind, in actions of this character, unless
it be necessary to enable the jury to fairly understand the
spoken testimony.    When it is so necessary for the jury to
see the object, why is it less necessary for a court of review
to see it?

But, continuing, is there, then, in this bill of exceptions,
such a description of the rope as enables us to see, in effect,
what the jury saw in respect of it?   What the jury saw by
looking at the rope was, clearly, evidence to be considered
by them in connection with the other evidence in the case.
Thompson on Trials, Sec. 893; Peoria Gas Light & C. Co.
v. Peoria T. Ry. Co., *supra;* and Sanitary District v. Cul-
lerton, *supra.*

The rope is spoken of by several witnesses, variously, as
being six or eight feet long; an inch and a half in diameter
when first used; without anything in its appearance to
indicate there was any defect in it; good sound rope; splen-
did new rope; the same kind of rope as that which had
been used a long time for the same purpose; like in size and
appearance the other rope used in the work; undistinguish-
able, so far as appearances went, from any other rope of its
size; torn in one or two places other than at the fracture,
in a manner not accounted for; bruised in some other places,
explained as having occurred after the accident, and as tied
together in mending it from a previous break in a place dif-
ferent from the present break.

It is manifest that the witnesses who said the rope was new, etc., spoke of it as it was and appeared at the time it was made into the sling, and not at the time of the accident, for it is conceded it was in use and broke about a week before and had been mended, and it was made to appear by appellant's examination of one of his own witnesses, that it was torn in one or two places which he could not account for; and, also, it was proved, without contradiction, to have been in use since, during apart, at least, of the term of employment of an employe who had quit work the previous month.

The record nowhere indicates the material of which the rope was made, whether of hemp, manila, flax, coir, cotton, or other vegetable matter—materials of varying degrees of strength and durability, which all men may be presumed to know are manufactured into rope—or how it had been taken care of in respect of the elements.

But, should it be said that there can be no presumption that the rope was not stricken from the record, because of the certificate of the trial judge to the bill of exceptions, we must look to see what such certificate is.

Imperial Hotel Co. v. Claflin Co., 175 Ill. 119, indicates that because of the certificate of the judge in that case, no presumption either way would be indulged in with reference to a document there given in evidence, but omitted from the bill of exceptions. The certificate of the judge, in that case, contained the words: "which was all the evidence offered in this case by either party."

In the case at bar, at the close of the testimony it is stated: "which is all the testimony offered on the trial of said cause by either party."

Then follow ten pages of instructions, motions and rulings, at the end of which the judge certifies as follows:

"And forasmuch as the matters above set forth do not fully appear of record, the defendant tenders this his bill of exceptions and prays that the same may be signed and sealed by the judge of this court, pursuant to the statute in such case made; which is done accordingly this 23d day of Decr., 1897."

And the signature and seal of the judge is affixed.

It is said, in Thompson on Trials, Vol. 2, Sec. 2784, in speaking of the necessity of it being made to affirmatively appear that a bill of exceptions contains all the evidence, "It will not be sufficient that it contains a recital that 'this was all the testimony given in the cause,' since the word 'testimony' is not synonymous with evidence," and decisions of the Supreme Court of Indiana are cited to support the text.

That it has always been the law of this State, that if a bill of exceptions does not state that it contains all the evidence, a court of review will, in every case where the assigned errors question the sufficiency of the evidence to sustain the verdict, presume that the decision of the lower court which could be, was justified by evidence not shown, if that shown were not sufficient, we need only to cite Garrity v. Hamburger, *supra*.

But the proposition of Mr. Thompson concerning the distinction to be observed between the words "testimony" and "evidence," used in connection with bills of exception, is, in our opinion, too highly technical to be followed, as a general rule. Those words are often used interchangeably in the practice of this State.

Considering, however, the familiar rule that a bill of exceptions is the pleading of the party who prepares it, and is to be construed most strongly against him (Crane Co. v. Tierney, 175 Ill. 79), we think it may well be, that where a bill of exceptions shows upon its face, in the body thereof, that an instrument of physical evidence, such as a material object, which does not accompany the bill, was admitted in evidence, a certificate by the judge that the bill contains all the testimony, should not be construed as overcoming the otherwise affirmatively appearing fact that such omitted instrument was admitted and retained in evidence in the case, nor as giving rise to a controlling presumption of law that the bill does contain all the evidence. And, especially so, in view of the holding in Garrity v. Hamburger Co., *supra*, that the certificate in that case which stated: "This was

and is all the testimony offered or received upon the trial of said cause by either party," did not overcome what otherwise "affirmatively appeared, from the bill of exceptions, that evidence which probably bore on the question in issue was introduced at the hearing, but was not copied into the bill of exceptions."

From a consideration of all the evidence that the record contains, including everything descriptive of the rope in question, as well as the fact of the omission from the bill of exceptions of the rope itself, we are bound by intendment of law to conclude that the evidence omitted from the record would sufficiently supply whatever is necessary, if anything, to sustain the verdict.

As said in Bates v. Bulkley, 2 Gilman, 389, "The fact that the bill of exceptions does not show that it contains all the evidence given on the trial, is conclusive against our reversing the judgment," for insufficiency of evidence to support the verdict.

We must not be understood as acceding to the correctness of the verdict if we were at liberty to consider the merits of the case, upon the partial record before us.

No question of law is argued that does not depend upon questions of fact, that, as seen, may not be considered by us under the incomplete bill of exceptions, and it only remains for us to affirm the judgment of the Superior Court, which is accordingly done.