THE CHICAGO AND STATE LINE RAILWAY COMPANY

*v.*

JAMES MINES *et al.*

*Opinion filed April 17, 1906—Rehearing denied June 7, 1906.*

1. EMINENT DOMAIN—*proof of similarity and character of other lands must be made to justify evidence of their sale.* To justify admitting in evidence proof of voluntary sales of other lands in the vicinity of the land condemned, as an aid in estimating the value of the latter, the party offering such proof must show that the lands so sold were similar in locality and character to the land condemned.

2. SAME—*suggestive interrogatories relating to incompetent evidence are improper.* Where the court, in a condemnation proceeding, has properly excluded evidence of voluntary sale of other land, it is improper for counsel for defendants to persist in asking the witnesses suggestive questions embodying the matter of the price paid for the land at that sale, thus getting the excluded evidence before the jury.

3. SAME—*value of land is to be determined as of the date the petition was filed.* In condemnation the value of the land taken and that of the land not taken but damaged must be determined as of the date the petition was filed, and an instruction which permits the estimate of the jury to be based upon the value at the date the petition was filed or what the land "might reasonably be expected to be worth in the near future" adds an erroneous element.

4. SAME—*jury cannot disregard evidence heard in open court.* An instruction in condemnation which is open to the construction

that the jury may disregard entirely the evidence heard in open court and fix the damages upon their view of the premises alone, is misleading.

5. APPEALS AND ERRORS—*when objection to instructions includes those modified.* A written reason in support of a motion for a new trial which assigns as error the giving of all the instructions requested by the defendant sufficiently presents the question of error in giving those of defendant's instructions which the court modified. (*Consolidated Coal Co.* v. *Schaefer,* 135 Ill. 210, distinguished.)

APPEAL from the County Court of Lake county; the Hon. DEWITT L. JONES, Judge, presiding.

S. A. LYNDE, BARTON CORNEAU, and SMOOT & EYER, for appellant.

COOKE, POPE & POPE, for appellees James and Anna Mines.

A. K. STEARNS, E. J. HEYDECKER, and ELBRIDGE HANECY, for appellees Young, McKeown and Dady.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This was a proceeding begun in the county court of Lake county by appellant to condemn a right of way for its road across five tracts of land in Lake county and across a private way upon a sixth tract. From the judgment entered in that court this appeal is prosecuted.

These tracts all lie north of the city of Lake Forest, which is on the shore of Lake Michigan, about twenty-eight miles north of the city of Chicago, and are crossed by appellant's line in a northerly and southerly direction, the road running slightly west of north as it progresses northward. Proceeding along the right of way in a northerly direction, the tracts involved are reached in the following order, giving to each the name by which it is known in this litigation: The Mines tract, the south Dady tract, the Young tract, the McKeown tract and the north Dady tract, except that the

221—29

Tiernan and Frank interest, being the private way herein-above mentioned, is south of the McKeown land. Each tract is owned by different of the appellees, except that both Dady tracts are owned by Robert Dady.

The principal street, or one of the principal streets, of Lake Forest, and the one upon which the finest residences in that city are located, is Deerpath avenue, running east and west, and, continuing westward, this avenue passes just north of the grounds of the Onwentsia Club, which contain two hundred and eighty acres, and are used for golf, polo, tennis and other outdoor sports. Many of the members of this club are men of great wealth, and they, and others in like financial circumstances, have established beautiful and expensive country homes about the club grounds, and in, and in the vicinity of, the city of Lake Forest. This has greatly enhanced the value of farm lands in that neighborhood which are adapted to the use of people desiring to build homes of this character and which are within the zone where such residences are now being constructed or are apt to be established in the near future. Whether or not each of the first five tracts above mentioned was so located as to be within this zone, and whether each was adapted to this purpose, were the principal causes of a wide difference between the estimates of damages made by those who testified for petitioner on the one hand, and those who testified for respondents on the other.

The village of Lake Bluff lies on the lake shore a few miles north of Lake Forest, and a few miles farther north, on the same shore, is the village of North Chicago. The five tracts first above mentioned are distant from the lake shore from one to two miles. The greatest extent of each of these tracts is from east to west, and all are now used for ordinary agricultural purposes.

The Mines tract contains 132.62 acres. It lies just north of the corporate limits of the city of Lake Forest and is partly within the village of Lake Bluff. The land farthest north

from Lake Forest, which up to this time has been purchased and utilized for a country home, adjoins this tract on the south. From Deerpath avenue to the south line of this land is a distance of one and one-half miles. Appellant's right of way crosses the western portion and takes 4.39 acres, leaving 13.6 acres on the west and 113.63 acres on the east.

The south Dady tract contains 70 acres. It is two and one-half miles north of Deerpath avenue. The right of way crosses near the west end, taking 6.25 acres, and leaving 7.81 acres on the west and 55.94 acres on the east.

The Young tract adjoins the south Dady tract on the north and contains 61.03 acres. The right of way crosses it near the west end, taking 3.13 acres, and leaving 10.23 acres on the west and 47.67 acres on the east.

The McKeown tract lies one and one-half miles west of the south portion of the village of North Chicago and about five miles north of Deerpath avenue. It contains 368 acres. The line of the road crosses nearest the east end of the tract, taking 9.34 acres, and leaving 103.05 acres on the east and 255.61 acres on the west.

The north Dady tract lies immediately north of the McKeown tract. There is a highway between the two, which is an extension, west, of Twenty-second street in the village of North Chicago. This tract contains 100 acres. The proposed right of way will cross slightly nearer the eastern boundary, taking 3.13 acres, and leaving 39.38 acres to the east and 57.49 acres to the west.

The Tiernan and Frank interest is a private right of way across a 40-acre tract a little south of the McKeown tract. This private right of way approaches the appellant's proposed line from the east, crosses the same diagonally, and later crosses back again diagonally to the east. In this proceeding appellant did not seek to condemn the land in this 40-acre tract other than the interest of Tiernan and Frank in this private way in so far as the same will be affected by appellant's road.

The jury heard the evidence, viewed the premises and returned a verdict awarding damages, as follows:

*Mines tract.*

Compensation for land taken (being at the rate of $300
    per acre for 4.39 acres)..........................$1311.00
Damages to remainder .............................. 7000.00

*South Dady tract.*

Compensation for land taken (being at the rate of $190
    per acre for 6.25 acres).........................$1187.50
Damages to remainder .............................. 1500.00

*Young tract.*

Compensation for land taken (being at the rate of $220
    per acre for 3.13 acres)...........................$ 688.60
Damages to remainder......... ...................... 2500.00

*McKeown tract.*

Compensation for land taken (being at the rate of $150
    per acre for 9.34 acres)..........................$1401.00
Damages to remainder .............................. 9000.00

*North Dady tract.*

Compensation for land taken (being at the rate of $125
    per acre for 3.13 acres).........................$ 391.25
Damages to remainder...... ...................... 2000.00

Damages to the interests of John Tiernan and Margaret
    Frank.... ............... ......................$ 100.00

After overruling appellant's motion for a new trial the court entered a judgment in accordance with the verdict.

It is assigned as error that the finding of the jury is excessive as to each and every of the appellees. We have carefully examined the evidence as to the five tracts first above mentioned. The damages awarded are within the range of the estimates fixed by the witnesses as to each of those tracts, the jury viewed the lands involved, and we cannot see that passion or prejudice influenced their action. If the record were otherwise free from error we would not be warranted in disturbing the verdict. *Sexton* v. *Union Stock Yards Co.* 200 Ill. 244; *Groves and Sand Ridge Railroad Co.* v. *Herman,* 206 id. 34; *Illinois, Iowa and Minnesota Railway Co.* v. *Humiston,* 208 id. 100; *Brown* v. *Illinois, Iowa and Minnesota Railway Co.* 209 id. 402.

The controversy in this court as to the property other than the Tiernan and Frank interest rests upon considerations which, in the main, do not affect that interest, and it will therefore hereafter be treated by us separately in this opinion.

There was an unusual variance between the estimates of the witnesses as to the damages to the five tracts first herein mentioned. For example, the lowest estimate of damages to the Mines tract was that of John Gould, a witness for appellant, who had resided in Lake Forest for twelve years and was engaged in the real estate business, dealing in real estate in and around that city. He fixed the damages to the owners of this tract for lands taken and lands not taken at $995.50. The highest estimate was that of R. B. Erskine, who testified for appellees, and who had resided in Lake Forest seventeen years and had been engaged in the real estate business there for the last five years. His estimate for lands taken from this tract, and lands damaged but not taken, was $19,743, while the verdict was for $8311. A similar divergence, though somewhat less in degree, existed between all those who testified for appellant and those who testified for appellees, growing less, however, as the property to which the witnesses addressed themselves was farther north and more remote from Lake Forest, being least as to the north Dady tract. As we have already indicated, this is explained by the differing views of those who spoke on either side as to whether the present market value of these lands is affected by the possibility of their use in the future by men of wealth, residing in the cities, for country homes, to which they can resort for rest and recreation.

It appears from the evidence that, whatever the future may develop, neither of these five tracts is now so used, and that it is proximity to Lake Forest that makes land desirable, if otherwise adapted, for the use in question. Proximity to Lake Bluff and North Chicago does not have this effect.

Delavan Smith testified for appellees that he had resided. in the township in which the Mines land is located for thirty years and was familiar with the use of property contiguous to Lake Forest, and was the pioneer in establishing country homes along the road leading past the Mines property; that the demand for property contiguous to Lake Forest for such use had grown rapidly, and that property desirable for that purpose had increased in value nearly one hundred percentum each year during recent years. He fixed the boundaries of the territory within which land is now sought by wealthy home builders so as to include the Mines tract and exclude all other tracts involved in this suit.

It appears that one Ogden Armour has purchased lands, lying a considerable distance south of the Mines tract, desirable as a site for a high-class rural establishment. In cross-examining a witness who testified for appellant, counsel for appellees asked this question: "Don't you know he (Armour) paid from $300 to $700 an acre there?" An objection was sustained, and then counsel inquired whether if the witness knew "that Ogden Armour paid from $300 to $700 an acre for farming lands two or three miles south of the McKeown lands," his testimony would be different. Later another of counsel for appellees, notwithstanding the ruling of the court already announced, in cross-examination asked another witness in reference to a sale of a particular tract to Armour some distance south of the most southerly of those here involved, and the witness stated that he did not remember the sale, and that if the amount per acre was named he could not tell whether the amount so specifically stated was correct. Counsel for appellees then asked: "If the sale was made at $425 an acre, would you say that that was the price that was paid?" An objection was here again made and sustained, and it is urged that these questions so propounded by counsel so seriously prejudiced the rights of appellant that the mere fact that objections were sustained did not render the improper interrogatories harmless.

"Evidence of voluntary sales of other lands in the vicinity, and similarly situated, as affecting their value, is admissible in evidence to aid in estimating the value of the tract to be condemned. But it is incumbent on the party offering such proof, to show that the lands so sold were similar in locality and character to the lands in question." *O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151.

It did not appear, however, that the lands purchased by Armour "were similar in locality and character" to any of those in which appellees were interested. The court properly ruled that evidence of the price at which they were sold was not material, and the action of counsel in conveying to the jury, by suggestive interrogatories, the very information which the court had held the jury should not have, was improper. As is said in *Scripps* v. *Reilly,* 38 Mich. 10: "The essence of the wrong consists in the fact that such incompetent testimony is brought to the attention of the jury, more than in the method adopted in communicating the fact. No matter how the information is derived, the result is the same." Whether the course of counsel in this regard would lead to a reversal in this case we do not determine. The condition of the record in this particular is pointed out here for the reason that it is to be considered in connection with certain objections to instructions.

The court gave twenty-six instructions, without modification, at the request of petitioner, and gave fifteen other instructions, numbered from 1 to 15, inclusive. These fifteen had originally been prepared and passed up by appellees. The court modified certain of them and gave them as modified, and gave the remainder of the fifteen without modification, and gave none other aside from the twenty-six given at the request of appellant. Objections are now urged to certain of the instructions so modified and given. It is insisted by appellees that these objections were not made to appear by the written points in writing filed in support of the motion for a new trial. The seventeenth reason assigned for a new

trial was error in giving of the instructions "numbered 1 to 15, inclusive," asked by respondents and given at their request, and one error assigned is the refusal of the court to allow the motion for a new trial; but it is said the point in support of the motion only urges as error the giving of certain instructions asked by respondents and given at their request; that the instructions which were modified by the court and given as modified were not asked by respondents or given at their request, and consequently error in those, if any there be, has been waived. Reliance is placed upon the case of *Consolidated Coal Co.* v. *Schaefer,* 135 Ill. 210, where we held that a party cannot be permitted to assign for error the modification of his own instructions where he fails to specify this as one of the grounds for a new trial. That case is not in point here. The conclusion there announced is based upon the rule that this court will not consider an alleged error not called to the attention of the trial court, and there the appellant had failed to advise the trial court that he complained of the modification of his own instructions. Here the instructions which were modified were those of the opposite party. Instructions asked by the appellant were given as requested, consequently it could not complain of the giving of any of those. It did complain of the giving of each one of fifteen instructions numbered from 1 to 15, given, as it said, at the request of appellees. What instructions were thereby specified? Manifestly the fifteen given by the court which were not given at the request of the railway company. While the language used in designating these objections in the points in support of the motion for a new trial was not strictly accurate, we think it served to advise the trial court that complaint was made of the giving of each of these fifteen instructions, and that is all the law requires.

Appellees' first instruction was misleading, in that it was apt to cause the jury to conclude that they might disregard entirely the evidence heard in open court and fix the damages upon their view of the premises alone. Such is not the law.

The evidence heard in open court must be considered by the jury.   (*Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 Ill. 144; *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 id. 372.)   The case of *Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370, relied upon by appellees, does not go far enough in this regard to sustain their position.

Appellees' eighth instruction, as modified and given, reads:

"The court instructs the jury that if they find, from the evidence, that any of the farms in question, in consequence of their character and in view of their situation with reference to the villages of Lake Bluff and North Chicago and the cities of Lake Forest and Chicago, possess a greater value for the purposes of a country home than they do for the purposes for which they have been heretofore used, then each of the owners of such farms are entitled to full and adequate compensation for their lands taken, respectively, estimated at the highest cash market price the same was worth on the 9th day of May last or as it might reasonably be expected to be worth in the near future.   And you are further instructed that in determining the fair cash market value of said farms so adapted to the purpose of country homes, if any, it will be proper for you to consider whether the quantity of land and number of farms so situated as to be available for country homes, and not already used for that purpose, is limited, and whether or not there is not an increasing demand for such farms."

The railway company filed its petition on May 9, 1905. The value of the land taken, and the value of the land damaged but not taken, must be considered as they existed upon that day.   (*South Park Comrs.* v. *Dunlevy,* 91 Ill. 49; *Calumet River Railway Co.* v. *Moore,* 124 id. 329; *Lieberman* v. *Chicago Rapid Transit Railroad Co.* 141 id. 140; *Dowie* v. *Chicago, Waukegan and North Shore Railway Co.* 214 id. 49.)   The words in the instruction, "or as it might

reasonably be expected to be worth in the near future," add an erroneous element. Their harmful effect may be realized best when they are considered in connection with the testimony of Delavan Smith, showing the rapid increase in the demand for lands for country homes and the remarkable advance in the values of lands desired for that purpose, and when considered in connection with the improper suggestions of counsel showing to the jury the high prices realized for such lands in a fashionable locality.

The only evidence heard in open court in reference to the Tiernan and Frank interest was to the effect that it would sustain no damage whatever from the construction of the proposed road, in view of the provision to be made by the railway company to prevent interference with this easement. We think appellees' first instruction may have led the jury to disregard this evidence.

For error in giving the first and eighth instructions above discussed, the judgment of the county court will be reversed and the cause remanded for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*