THE SOUTH PARK COMMISSIONERS, Appellee, vs. FRED-
ERICK F. AYER et al. Appellants.

Opinion filed December 15, 1908.

1. REMOVAL OF CAUSES—when petition to remove condemnation
suit should be filed. The day upon which the notice by publica-
tion is returnable is the time when non-resident defendants in a
condemnation proceeding are required, within the meaning of the
act of Congress relating to the removal of causes, to plead or an-
swer, notwithstanding the law does not require them to file any
written pleading, and the fact that no default is taken does not
authorize the filing of a petition for removal after the return day.

2. EMINENT DOMAIN—proof of what petitioner paid for other
property for same enterprise is incompetent. In condemnation it
is not competent to prove what the petitioner has paid for other
property purchased by it for the same enterprise, as such a sale is
in the nature of a compromise and for that reason is not a fair
measure of value.

3. SAME—when possibility of obtaining switch track facilities
should be considered. Where the land condemned abuts upon an
alley next to railroad tracks along which properties similarly sit-
uated enjoy switch track facilities obtained by contract with the
railroad and permission from the city, the possibility that the own-
ers of the land condemned might effect the necessary arrangements
for switch track facilities should be considered in determining the
value of the land, and if such possibility adds to the value of the
land the owners are entitled to such addition.

4. SAME—when resisting owners are deprived of a fair trial.
Where the owners of part of the half block of land sought to be
condemned have agreed to accept as compensation a sum fixed by
the petitioner's evidence as to value, and are not represented by
counsel at the trial, the effect of requiring compensation for the
entire half block to be ascertained at one time is to get before
the jury the price which such owners have agreed to take, and
deprives the owners who have made no agreement, of a fair trial.

5. INSTRUCTIONS—an instruction should not intimate that jury
may fix value on their view alone. An instruction which affords
the jury basis for the belief that they may fix the amount of com-
pensation and damages upon their judgment, founded solely upon
their view of the premises, if they believe such view affords them
a more reliable basis for an assessment of the compensation and
damages than does the evidence of witnesses, is erroneous.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

On July 3, 1907, the South Park Commissioners, a municipal corporation, filed its petition in the circuit court of Cook county to condemn for small park purposes certain lots in the city of Chicago, being half a block owned by Frederick F. Ayer and Jacob Rodgers, trustees under the will of James C. Ayer, deceased, Frederick F. Ayer, Henry S. Ayer and Leslie Josephine Pearson, appellants, and others. The half block fronts on LaSalle street and extends back one hundred and twenty feet to a ten-foot alleyway running north and south, which adjoins the elevated right of way of the Chicago, Rock Island and Pacific, the Lake Shore and Michigan Southern and the Chicago and Eastern Illinois railroads. It is bounded on the north by Twenty-fifth and on the south by Twenty-sixth street. Immediately opposite the property in question, on the west side of La-Salle street, is a block of ground owned by appellee which is used as a small park or playground. Appellants owned the south two-thirds and the National Fireproofing Company owned the north one-third of the half block sought to be condemned. A part of appellants' lots were vacant and un-improved and the remainder were improved and were occupied by tenants. All of the appellants were citizens and residents of the State of New York except Jacob Rodgers, who was a citizen and resident of Massachusetts. The other defendants named in the petition were residents of the State of Illinois.

On January 24, 1908, appellants filed a petition in said court, signed by William C. McHenry as their agent, for the removal of the cause to the United States Circuit Court for the Eastern Division of the Northern District of Illinois. This petition the court denied. On February 17, 1908, appellants, upon leave of court, filed a second petition to remove the cause, which was also denied.

Upon the hearing appellants moved the court that a separate trial be awarded to them, for the reason that they were the sole owners of and interested in separate and distinct lots and improvements from the lots and improvements of the other respondents in said suit. The motion was refused. They then moved the court for permission to call witnesses to testify as to the value of lots in the same block which appellee sought to take, other than those owned by appellants, for the reason that as to all the other owners and parties interested in lots and improvements in the half block of land in question the owners thereof had been settled with and the prices of said lots and improvements thereon had been agreed upon between petitioner and said other respondents out of court, and for the additional reason that if respondents (appellants here) were not permitted to show by respondents' witnesses the value of said lots in said block other than respondents' lots, it would appear to the jury that there had been a settlement and an agreement made as to the prices to be paid for all of the lots other than respondents' lots; that petitioner's witnesses would testify to certain values, and that there would be no other testimony as to the value of all lots other than said respondents', and that such fact, as the trial developed, would seriously affect and injure the said above named respondents (appellants here) and prevent their being given a fair and impartial trial. Upon the denial of this motion appellants moved the court that, there being no conflict or issue as to the values or amounts to be awarded by the jury for the taking of all the lots and improvements in said half block in question in this suit other than the lots and improvements in said half block of which appellants were the owners, there be a trial as to appellants' lots and improvements, and that when the jury had rendered a verdict in respect to such lots and improvements said jury be again directed to retire and to award a verdict upon an agreed valuation as to all of the other lots and improvements. This motion was also denied.

The value of the ground owned by appellants was placed by witnesses at from $140 to $275 per front foot. The jury by their verdict fixed appellants' compensation at $60,-000 for ground taken without any allowance for improvements, being at the rate of $150 per front foot for all of the ground belonging to appellants that was taken, and judgment for that amount was entered in their favor for their ground without improvements. Appellants owned only a small portion of the improvements on their ground, and for those improvements the jury in their verdict made a separate award of $2929. No complaint is made of this allowance for improvements. Appellants regard the $60,000 for the ground as insufficient. Other improvements on their ground were owned by tenants.

Appellants in this court urge (1) the court erred in refusing to order the removal of the cause; (2) the court erred in overruling appellants' motion for a separate trial; (3) the court erred in passing upon objections to evidence; (4) the court erred in instructing the jury; (5) the verdict of the jury is inadequate in amount and in that respect is contrary to the evidence.

GEORGE P. MERRICK, for appellants.

HOLLETT, SAUTER & HENKEL, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

It is first argued that the court erred in refusing to remove the cause to the Federal court so far as it concerned the appellants in this proceeding. Appellee contends that the petition was not timely. Section 3 of the act of Congress to regulate the removal of causes from State courts, as amended August 13, 1888, provides, with reference to cases of this character, that the party desiring to remove the cause shall file a petition in the State court "at the time, or any time before the defendant is required by the laws of the

State or the rule of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff." (Hurd's Stat. 1908, p. 83.) The Eminent Domain act (sec. 4) provides that service of summons and publication of notice to non-residents shall be made as in cases in chancery. Section 16 of the act on chancery practice provides that every person who shall be summoned, served with a copy of the bill or petition or notified by publication, shall be held to except, demur, plead or answer on the return day of the summons, or in case of service by notice, at the expiration of the time required to be given. Notice was given to appellants by publication, and that notice was returnable on the third Monday of August, 1907. The first petition for removal was filed January 24, 1908. No default was taken against the appellants. The law does not require them to file a written pleading of any character, and it is contended, under these circumstances, by the appellants, that the petition for removal was filed in apt time. With this contention we do not agree. If the appellants did not appear on the return day of the notice they could be defaulted, and it is our judgment that the day upon which the notice was so returnable was, within the meaning of the Federal statute, the time when the appellants were required by the laws of this State to answer or plead. The mere fact that the default was not taken on this day or any other day does not extend the time within which an application for removal may be made. *Kansas City, Ft. Scott and Memphis Railroad Co.* v. *Daughtry,* 138 U. S. 298; Moon on Removal of Causes, sec. 156.

Appellants owned the south two-thirds of the half block. The north one-third of the half block belonged to another but was included in this proceeding, and the same jury fixed the compensation for the entire half block in the same trial and by the same verdict. The verdict in each instance fixed the compensation for the ground separately from the compensation which it fixed for the improvements. The ground

in the half block, without the improvements, was all of the same general character. The witnesses for petitioner testified that the south one-third of the ground was a little more desirable than the north one-third, which, in turn, was a little more desirable than the middle one-third. This solely on account of the location of the various parts of the half block. Appellants sought, unsuccessfully, to have the case, so far as it related to their property, tried separately, basing their application upon the contention that there had been an agreement between the petitioner and the owners of the north one-third of the ground in reference to the compensation that should be allowed those owners; that this agreement would necessarily appear to the jury and would be prejudicial to the interests of appellants, for the reason that the jury would be inclined to fix the value of appellants' ground upon the same basis as that which the petitioner and the owners of the north one-third of the ground had adopted in agreeing as to the value of that one-third.

No counsel representing the owner of the north one-third of the ground took any part in the trial. No witness was called or testified in its behalf, but the cause as to that ground was submitted to the jury upon the testimony adduced by the petitioner. The witnesses for the petitioner in each instance fixed the value of the ground apart from the value of the improvements. Efforts made by the counsel for the appellants to examine or cross-examine with reference to the north one-third of the ground were in the trial successfully met by the objection that the counsel did not represent the owners of that property. Just before the case went to the jury, counsel representing the owners of certain buildings located on the property owned by appellants appeared in court and stated verbally: "If the court please, we have also agreed as to the values of certain barns standing upon some of the lots, so that there will be no occasion for me or the clients I represent to give any testimony; but my understanding, your honor, was,

that the amounts agreed upon should be written into the verdict before it goes into the hands of the jury. To that Mr. Sauter objects for some reason or other, and it leaves the matter at large in the hands of the jury." The Mr. Sauter referred to was one of the attorneys for the petitioner.

It is entirely apparent to us, and must have been to the jury, that some agreement had been entered into by which the owners of the north one-third of the ground had agreed to accept as compensation a sum fixed by the evidence for the petitioner as the value of that property. The law is that it is not competent to prove what the petitioner has paid for other property purchased by it for use in the same enterprise. The property owner, realizing the power of the petitioner to take his property, may prefer to take less than the real value rather than incur the expense of a litigation where he can in no event obtain more than its actual value. As is said by the authorities, such a sale is in the nature of a compromise, and for that reason is not a fair measure of value. *Peoria Gas Light and Coke Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372; *Chicago and Alton Railroad Co.* v. *Scott,* 225 id. 352.

The course pursued by appellee in the trial court resulted in its obtaining, indirectly, the benefit of a state of facts, evidence of which, if offered directly, would have been incompetent. Appellee seems unable to point out anything which moved the court, in the exercise of its discretion, to compel the appellants to submit their cause with that of the owners of the north one-third of the half block. It does not appear that a separation of the cause of appellants could have worked any injury to the petitioner or to any of the owners of the property, or could have required more than a few minutes additional time to dispose of the entire subject matter of the suit. It seeks, however, to show that the error, if any, was harmless.

This ground, located as it is, seems well adapted for use as a site for a building for warehouse or manufactur-

ing purposes. Immediately east of this half block, running north and south through the block, was a public alley ten feet in width. Immediately east of that alley, upon an embankment about fifteen feet above the surface of the ground, were the lines of several railway companies, which run north and south through that part of the city. Properties directly north and south of this, abutting upon and west of this alley but in other blocks, enjoy switching facilities,— that is, a switch track is extended across the alley to the second story of the building, or a viaduct or platform is built from the second story across the alley to a switch track, so that freight can be loaded upon and unloaded from freight cars at the door without teaming. In order to enjoy switching privileges of that character it is necessary for the property owner to make a contract therefor with one of the railroad companies and also to obtain from the city council permission to build over or upon the alley, and the question whether or not the property involved in this suit is now entitled to enjoy, or can at the option of the owners readily obtain, such switching privileges, was one much discussed in the trial of the case. Three witnesses testified as to the value of the ground without the improvements on the part of the petitioner and a like number testified as to that value on the part of the appellants. Two of those who testified for appellee fixed the value of the ground of appellants at $140 per front foot. The third of those who testified for appellee fixed the value of the ground at $150 per front foot. The testimony of these witnesses was that this ground would be worth about one-third more if it was in the enjoyment of the switching facilities owned by the properties abutting upon the same alley in blocks north and south. Their testimony was based upon the theory that no such switching facilities existed, and one of them was improperly permitted to state, over objection, that he had had experience with the city council in similar cases in another part of the city and had been unable to get an ordi-

nance passed granting permission. The witnesses who testified for appellants fixed the value of the same ground at from $240 to $275 per front foot. This testimony was based upon the assumption that the owners of this property had, or would be readily able to obtain, switching connections with a railroad by means of a platform, viaduct or similar structure over the alley.

The compensation allowed by the jury for appellants' ground was at the rate of $150 per front foot. Appellee states that the evidence was offered on two theories: one that the property had or could readily obtain the switching facilities; the other that it was not entitled to such switching facilities; that the amount allowed was the highest amount fixed by any witness who testified upon the latter theory, and inasmuch as the proof does not show that the owner of the property is now entitled to place any permanent platform, viaduct or like structure upon or over the alley and does not show that the necessary contract with a railway company has been negotiated, no harm has been done the appellants by requiring them to submit their cause to the jury with that of the owners of the north one-third of the ground, because the amount allowed was the highest amount fixed by any witness as the value of the property without the right in question,—in other words, the insistence is, appellants have been awarded the greatest amount that could have been awarded had their cause been tried separately. We do not think this argument well considered. In the first place, it cannot be said, as a matter of law, that the question of the value of the property can be determined alone on the theory that the owners cannot obtain these switching privileges merely because they do not now have them. The facilities can be obtained if the necessary contract can be made with the railroad companies and if the requisite permission can be obtained from the city. It is possible, on account of its proximity to the tracks, that the owners of this property can make the required arrange-

ments.  If the tracks were not in the same block greater
difficulty would be encountered in obtaining the very de-
sirable rights now under consideration.  In that event it is
highly probable they could not be acquired at all.  In de-
termining the value of the ground, the owners thereof are
entitled to have the jury take into consideration the possi-
bility of effecting the needed arrangements.  If that possi-
bility adds to the value of the ground the owners are entitled
to the addition.  It appears upon an examination of the tes-
timony of the three witnesses who testified for appellee, that
while they say they took into consideration the proximity
of the railroad tracks to this property in fixing its value,
they did not consider the possibility of obtaining the switch-
ing facilities as increasing the value of the property.  They
regarded that possibility as too remote, but the jury were
not necessarily bound by that conclusion of these witnesses.
Appellee argues that as the right to the switching facilities
did not exist, the proximity of the railroad tracks was an
actual damage to the property on account of the noise and
dust necessarily attendant upon the operation of the trains.
Under the circumstances it is entirely clear to us that the
fact that the owners of the north one-third of the ground
were willing to take a price fixed by the evidence for ap-
pellee would be regarded by the jury as an indication that
the price fixed, upon the same basis, by the same witnesses
for the property of appellants immediately adjoining was a
fair valuation of that property.  The jury viewed the prem-
ises, and might reasonably, under the proof in this case,
have fixed the value of this ground at more than $150 per
front foot although the owners do not now possess the
switching rights.

No reason is apparent upon this record for the action
of appellee in insisting upon having the question of the
compensation to be paid for the entire half block determined
by the jury at one time, other than a desire to prejudice
appellants by showing to the jury that the owners of the

north one-third of the property had agreed to take a sum fixed by appellee's evidence for their ground. The course pursued in this regard resulted in appellants being deprived of a fair trial.

The twenty-eighth instruction given at the request of the petitioner was in reference to the right of the jury to act upon their view of the premises in fixing the amount of the compensation. It is not materially different from the instruction condemned by this court in *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co. supra,* and of which we there said (p. 381): "This instruction clearly authorized the jury to base their estimate of compensation and damages solely upon their own inspection of the premises, provided, only, they were of opinion that such inspection furnished a more reliable basis for an assessment than did the evidence of the witnesses. While it required them to consider the evidence and directed them not to reject any of it arbitrarily and without reason, it gave to them a clear intimation that if in their opinion their inspection of the premises furnished a more reliable basis for an estimate of damages, such conclusion would of itself furnish a sufficient reason for wholly disregarding the testimony of the witnesses. Such, in our opinion, is not the law." That case has been referred to with approval by this court in *Chicago and State Line Railway Co.* v. *Mines,* 221 Ill. 448, and must be regarded as the law of the State. The holding of that case is not modified by the opinion of this court in *Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370. The earlier case is not referred to in the *Guyer case,* and it is clear that the court did not by the latter intend to change the law on this subject.

The jury's view of the premises is in the nature of evidence. It should be considered by them with all the other evidence in the case, and upon a consideration of all the evidence, including their view of the premises, they should determine the compensation to be awarded for property

taken. An instruction which affords them basis for the belief that they may fix the value of the property upon their judgment, founded alone upon their inspection of the premises, is just as objectionable as would be an instruction which would lead them to believe that they might fix the value of the property upon a basis reached by a consideration of the testimony of but one of many witnesses.

We deem it unnecessary to discuss other questions presented.

The judgment will be reversed and the cause will be remanded to the circuit court for further proceedings consistent with the views above expressed.

*Reversed and remanded.*