THE EAST ST. LOUIS, COLUMBIA AND WATERLOO RAILWAY, Appellee, *vs.* THE ILLINOIS STATE TRUST COMPANY, Trustee, Appellant.

*Opinion filed February 25, 1911.*

1. APPEALS AND ERRORS—*when Supreme Court cannot consider alleged error in overruling challenge to array.* The Supreme Court cannot consider alleged error in overruling a challenge to the array where the only showing in regard to the manner in which the jury was summoned is by an affidavit attached to the motion challenging the array but neither the motion nor the affidavit is made a part of the record by bill of exceptions.

2. SAME—*when alleged error in overruling motion for continuance cannot be considered.* Alleged error in overruling a motion for continuance, made in a condemnation case by a person not a party to the suit, upon the ground that the defendant was a mere trustee and that the beneficial owners should be made parties, can not be considered by the Supreme Court where no exception was taken to the overruling of the motion and the bill of exceptions shows nothing in regard to the matter.

3. PARTIES—*ordinarily all parties interested in land should be made parties to condemnation suit.* Ordinarily all persons interested in the land are to be made parties to a condemnation suit, and where a petition alleges that the defendant, as trustee, is the

owner, there is an implication that there is a *cestui que trust* who may be made a party; but such an allegation does not, of itself, show that there is a *cestui que trust* who is a necessary party.

4. Eminent domain—*filing of by-laws and plat of railroad is not a condition precedent to exercise of right of eminent domain.* The filing for record by a railroad corporation of a copy of its by-laws and plat of its railroad, as required by statute, is not a condition precedent to the exercise by the corporation of the right of eminent domain, and a failure to observe such requirements is not ground for dismissing the petition.

5. Same—*location of line of railroad is the act of the company and not its engineer.* The location of a railroad is the act of the company and not of its engineer, and a survey made by the engineer does not become the location of the road unless it is adopted by the company.

6. Same—*what does not show that the location of a road was changed.* Testimony by an engineer of the petitioner, in a condemnation proceeding, that the petitioner's line as first "located" did not cross defendant's land but that it did cross such land as finally "located," does not show that the location of the line was changed after adoption, where it is evident the engineer was speaking of the surveys made by him and not of a location of the line approved by the company.

7. Same—*basis for assessment of damages is the right acquired by the petitioner.* A corporation organized under the general Railroad act is authorized to use any motive power it may choose, and in the absence of any agreement or stipulation binding it to use electric power, only, or limiting in any way its right as to the character of the road or the business it shall conduct, the basis of the assessment of damages is the right to operate a railroad for general purposes, with any motive power, and it is error to submit to the jury the questions of what kind of a road will be built and how and for what purposes it will be operated.

8. Same—*probable use which affects cash market value of land should be considered.* If the probability that the land sought to be condemned will be required for an approach to a bridge over a river is of such a character as to affect the present fair cash market value of the land, the defendant is entitled to have such element considered by the jury in making their assessment of damages in a proceeding to condemn the land for railroad right of way.

9. Same—*verdict cannot rest solely upon the jury's view of the premises.* The verdict of the jury in a condemnation case should be based upon a consideration of all the evidence, including that supplied by their own view of the premises, and an instruction

should not be given which fairly intimates that they may disregard the other evidence and base their verdict solely upon their personal examination of the premises. (Contrary expression in *Guyer* v. *D., R. I. & N. W. Ry. Co.* 196 Ill. 370, disapproved.)

Appeal, from the County 'Court of St. Clair county; the Hon. John B. Hay, Judge, presiding.

Wise, Keefe & Wheeler, for appellant.

Whitnel, Browning & Gillespie, for appellee.

Per Curiam : The East St. Louis, Columbia and Waterloo Railway, the appellee, filed its petition in the county court of St. Clair county against a number of defendants, including the Illinois State Trust Company, appellant, for the condemnation of certain land for railroad purposes. The proceedings resulted in an assessment of damages in favor of the appellant and a judgment of condemnation of its property, from which it has appealed.

Before the jury was empaneled the appellant interposed a challenge to the array, which was overruled. This action of the court is assigned for error, but it is not open to review here because the bill of exceptions shows nothing in regard to the manner in which the jury was chosen or summoned. Attached to the motion of the appellant challenging the array is an affidavit of the sheriff as to the issuing of the venire and the summoning of the jury, but neither the motion nor the affidavit is any part of the record before us because not made so by the including of them in a bill of exceptions.

The petition averred that the appellant, as trustee, was the owner in fee simple of certain real estate desired to be appropriated. Before the trial Horace J. Eggman, who was not a party to the suit, entered his appearance and made a motion for a continuance of the cause until the beneficial owners of the land involved could be made parties,

248 — 33

alleging that the appellant held the legal title merely as trustee for himself and other *cestuis que trustent,* (naming them,) who were the real owners of the land. Error is assigned on the overruling of this motion, but no exception was taken and the bill of exceptions shows nothing whatever in regard to it, therefore we cannot consider it. The statute requires the petition to set forth the names of all persons interested in the property sought to be taken or damaged, as owners or otherwise, as appearing of record, if known, or if not known, stating that fact. The petition alleged that the appellant, as trustee, was the owner. A trustee implies a *cestui que trust* who has an interest in the property, and who, whether known or unknown, may be made a party. Ordinarily all parties interested in the subject matter are to be made parties to the suit. Whether or not this case comes within any exception to the rule we can not in the state of the record decide.

After the appellee had introduced evidence for the purpose of showing its authority to exercise the right of eminent domain the appellant moved to dismiss the petition for the reason that such proof was not sufficient. It is urged that this motion should have been sustained because the evidence failed to show that the compensation could not be agreed upon between the parties, because the railroad was not lawfully located over the land sought to be taken, and because appellee had not filed for record a copy of its by-laws or a plat of its railroad, as required by section 6 of chapter 114 and section 9 of chapter 109 of the Revised Statutes of 1874. The evidence sufficiently shows an inability to agree upon the compensation, and the requirements as to filing a copy of the by-laws and a plat of the railroad are not conditions precedent to the exercise of the right of eminent domain. The location of a line of railroad is done by act of the company. An engineer cannot locate the line, and a survey of a line made by an engineer does not become the location of the road unless adopted by

the company.    (*Black* v. *Chicago, Burlington and Quincy
Railroad Co.* 243 Ill. 534; 2 Elliott on Railroads, sec. 927;
23 Am. & Eng. Ency. of Law,—2d ed.—684, 685; 33 Cyc.
131.)    It has been held· that even after the company has
located the railroad by adopting a line surveyed, it may, be-
fore construction and before accepting land condemned, by
paying the damages assessed, change the location.    (*Gear*
v. *Dubuque and Sioux City Railroad Co.* 20 Iowa, 523;
89 Am. Dec. 550; *Mahaska County Railroad Co.* v. *Des-
Moines Valley Railroad Co.* 28 id. 437.)    In *Baltimore and
Susquehanna Railroad Co.* v. *Nesbit,* 10 How. 395, the Su-
preme Court of the United States said:    "It can hardly be
questioned that, without acceptance by the acts and in the
mode prescribed, the company were not bound; that if they
had been dissatisfied with the estimate placed upon the land
or could have procured a more eligible site for the location
of their road they would have been at liberty, before such
acceptance, wholly to renounce the inquisition.    The pro-
prietors of the land could have no authority to coerce the
company into its adoption."    In Pennsylvania it has been
held the location can be changed before the damages have
been assessed for right of way, but not afterwards.    (*Hag-
ner* v. *Pennsylvania Valley Railroad Co.* 154 Pa. 475; *Beale*
v. *Pennsylvania Railroad Co.* 86 id. 511; 2 Elliott on Rail-.
roads, sec. 929.)    The evidence in this record does not show
the location of the road to have been changed after it was
once made by the company.    Appellee introduced as a wit-
ness its engineer who made the surveys.    He testified he
made surveys and plats in the summer and fall of 1908 and
that the road was located; that within four months of that
time the road was finally located on the route sought to be
condemned.    He testified that as first located the line ran
alongside a public highway approximately one thousand feet
from the land sought to be condemned; that as first located
the road ran across one end of appellant's land but as finally
located it ran through the middle of said tract.    Mr. Rei-

necke, the engineer, was recalled and further testified that no survey had been adopted previous to the location of the road at the place on appellant's land where the right of way was sought to be condemned and that no other location had ever been approved and adopted. On cross-examination the witness stated he was not a member of the board of directors of appellee but knew where they located the road; that he submitted several surveys to them and the route sought to be condemned was the one adopted. No objection was made that the testimony of the engineer as to the location of the road by the board of directors was not competent, and no question is now raised as to its competency. The argument is that the evidence shows the road was changed after having been once located. We do not think this position correct. It is true the engineer used the word "locate" in testifying about the lines surveyed by him, but it is apparent he was speaking of the line surveyed by him and not of any action of appellee in adopting a line, for he says while he submitted several lines none except the one sought to be condemned was adopted and approved.

The following instruction was given at the instance of the appellee and objected to by the appellant:

"In this case you are instructed that you cannot assume that the railroad in question will be operated by steam power nor can you assume that such road will be operated as a coal road. You are not warranted in assuming, as against the defendant in this case, anything not shown or proven by the evidence, and if you believe, from the evidence, that the road in question is to be operated as an electric road, for the purpose of transporting passengers along its line, then and in such case you should so consider it in passing upon and determining the question involved."

Many of the witnesses testified that the building of an electric railroad would be a benefit to the land of appellant not taken, while the building of a railroad operated by steam, or a coal road, would not be a benefit or would be

a damage.   The appellee's engineer testified that he was instructed to make the survey for an electric road, and that some of the grades and curves on the line at other places than on the appellant's land were not adapted to the operation of a steam railroad and could not be improved for that purpose.   The appellee was incorporated under the general Railroad act.   It was authorized to operate its railroad by any motive power it might choose for the transportation of passengers and freight and for all other lawful purposes.   It did not stipulate to confine itself to electric power or undertake in any way to limit its right as to the character of its road or the business it should conduct. The right it takes under the judgment is the right to take the appellant's land and use it for the operation of a railroad by any power and for any purpose that its charter permits.   The right it was required to pay for under this instruction was the right to use the land only for the operation of a railroad by electric power and for the transportation of passengers.   Manifestly, it is getting more than it is required to pay for.   The question as to what kind of a road would be constructed, and how and for what purpose it would be operated, should not have been submitted to the jury.   The basis for the assessment of damages is the right acquired by the petitioner.

Instructions 13 and 15 are duplicates, and are copies of instruction No. 13 in the case of *Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370.   The instruction was approved in that case, but as stated in *South Park Comrs.* v. *Ayer,* 237 Ill. 211, that case did not refer to the earlier case of *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 Ill. 372, in which the court used the following language, on page 383:   "The verdict must be supported by the evidence and can in no case rest solely upon the personal examination of the premises by the jury, however well convinced they may be that their examination furnishes a more reliable basis for an assessment of dam-

ages than the testimony of the witnesses." This statement of the law was followed in *Chicago and State Line Railway Co.* v. *Mines,* 221 Ill. 448, and *South Park Comrs.* v. *Ayer, supra.* In our judgment the instruction approved in the *Guyer case* is inconsistent with that view, or is, at least, likely to mislead the jury and ought not to be given.

Instruction 19 given for the appellee and instruction 7 for the appellant are as follows:

19. "In this case you are instructed that while it is proper for the jury to take into consideration evidence showing the uses to which the land in question is reasonably adapted and the uses to which it might be put, still, upon this question you are further instructed that you can not speculate or deal in conjectures as to the use of the land in question in the future, but you must confine your deliberations to the reasonable uses to which it would be adapted and for which it might reasonably be used on the date of the filing of the petition in question. And in this connection you are instructed that although you may believe that some arrangements have been made for the building of a free bridge across the Mississippi river, and although you may further believe that the construction of the bridge proper across the river has been commenced and that approaches may be established or located for such bridge on the east side in the future, and that possibly an approach to said bridge might land near to the land in question, yet the court tells you, as a matter of law, that you cannot, as against the petitioner, the East St. Louis, Columbia and Waterloo Railway, assume that possibly something of this kind may occur or happen, in order to enhance the amount of the judgment to be given or allowed to defendant as to·the value of the land taken or as damages to land not taken, but in determining the question of the actual, fair cash market value of the land taken and of the amount of the damages, if any, to land not taken, you should confine yourselves to the testimony of the witnesses

as bearing upon the uses to which this land is adapted, and not speculate upon the possibility that it may be put to other uses."

7. "The owner of the land is entitled to the use and enjoyment of the same for the highest and best use to which it is adapted, and if you find, from all the evidence, that the land of the defendant, the Illinois State Trust Company, is susceptible of subdivision by laying off the same into lots, and also into tracts for manufacturing purposes and railroad or terminal yards, or as a landing point for the approach of a bridge in process of construction between St. Louis and Illinois, and that the taking of the piece of land described in the petition by the railroad company will injure and damage the property immediately contiguous to that so taken by the railroad company, and that the said land cannot be advantageously laid off into lots or subdivided into tracts for manufacturing purposes or used for railroad yards or terminal yards or as a landing point for the approach of the bridge, then the jury should take such facts into consideration in estimating the damages."

It is objected that these instructions are inconsistent and that that given for the appellee is wrong. This instruction is likely to be misleading, because from it the jury were likely to infer that the possibility of the use of the appellee's land for an approach to a free bridge across the Mississippi river was not to be considered in arriving at the amount of the damages. While it is true that the jury should not speculate upon the possibility that the land might in the future be put to some profitable use for which it was not at present available, yet if the probability that it would be required for an approach to the bridge was of such a character as to affect the then present fair cash market value of the land, it was an element which the appellant was entitled to have considered by the jury in making their assessment.

Other errors have been assigned and argued, but as they are not likely to occur upon another trial it is not necessary to consider them.

For the errors indicated the judgment of the county court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*