724

GEORGE TREHARNE AND ROSIE TREHARNE, No. 1934, RUSSELL YOUNG-
MAN AND LAURA M. YOUNGMAN, No. 1935, Claimants, *vs.* STATE
OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

HERGET & HOFFMAN, for claimants.

CHESTER H. BARNET, Corporation Counsel, for City of
Peoria.

OTTO KERNER, Attorney General; JOHN KASSERMAN,
Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of
the court:

The above claims arise as the result of the construction
of the east approach to the Cedar Street Bridge on S. B. I.
Route No. 121 in the City of East Peoria;—and by agree-
ment of all parties interested, have been consolidated for the
purpose of this hearing.

These cases, together with 28 similar cases, are known as
"East Peoria Bridge Cases", and inasmuch as all of such
cases grow out of the same transaction and involve the same
subject matter, the facts, so far as they apply generally to
all of such cases are set forth herein, in order to avoid the
repetition thereof in each of such cases.

The aforementioned Cedar Street Bridge crosses the Illi-
nois River and connects the cities of Peoria and East Peoria.
The construction of such bridge was originally undertaken
by the City of Peoria, but when it was about two-thirds com-

pleted, the money appropriated for the purpose became exhausted, and no further construction work was done for several years.

Prior to the construction of the approach, no attempt was made to secure the consent of the claimants therefor, nor was any attempt made to agree with them as to the damages they would sustain by reason of the making of the contemplated improvement.

Thereafter the respondent, through the Division of Highways, undertook the completion of such bridge and the east approach thereto, pursuant to an agreement between the City of Peoria and the respondent.

In pursuance of such agreement, the City Council of the City of Peoria on the 15th day of September, 1931, adopted an ordinance authorizing and directing the Mayor of said City to make application to the United States Fidelity and Guaranty Company for a surety company bond in the sum of $30,000.00, to indemnify the State against all lawful claims which should be established in the Court of Claims by property owners along and in the vicinity of the Cedar Street Bridge; and also authorizing the Mayor, City Clerk and Comptroller to execute the bond in question on behalf of the City and deliver said bond, when executed by all parties thereto, to the Department of Public Works and Buildings of the State of Illinois. Such application was duly made, and the bond was thereafter executed by the aforementioned officers of the City of Peoria and by the United States Fidelity and Guaranty Company, and delivered to the Department of Public Works and Buildings of the State of Illinois.

All of the property involved in the East Peoria Bridge cases is located in Richland Place Addition to the City of East Peoria, and lies just south of S. B. I. Route 121 as now constructed.

In traveling east from the bridge on said S. B. I. Route, the first public highway to the right is Sanford Street which forms the western boundary of Richland Place Addition. Continuing in an easterly direction, the streets in said Addition which intersect S. B. I. Route No. 121 in their proper order are as follows: Clark Street; Monson Street; Globe Street; and Franklin Street. Maple Street is an east and west street, 60 feet in width, which parallels S. B. I. Route No. 121, being about 200 feet south thereof. Elm Street is

an east and west street 15 feet in width which parallels Maple Street, being about 365 feet south thereof, and being the south boundary line of Richland Place. Lots numbered 533, 543 and 535, and part of Lots 536 to 543 inclusive, immediately adjoin the south right-of-way line of S. B. I. Route No. 121 and have a 15-foot alley at the rear. All other lots in said Addition (except those parts of lots hereinafter referred to, which lie north of S. B. I. Route 121) front on the north and south streets. Lots 565 to 569, both inclusive, front on the east line of Sanford Street; Lots 570 to 574, both inclusive, front on the west line of Clark Street; Lots 575 to 579, both inclusive, front on the east line of Clark Street; Lots 580 to 584, both inclusive, front on the west line of Monson Street; Lots 585 to 589, both inclusive, front on the east line of Monson Street; Lots 590 to 594, both inclusive, front on the west line of Globe Street; Lots 595 to 599, both inclusive, front on the east line of Globe Street;—and all of such lots (except Lots 595 to 599 inclusive) have a 15-foot alley at the rear thereof.

Prior to the construction of the approach in question, Roosevelt Street extended in a westerly direction from Washington Street to and beyond Sanford Street, and formed the north boundary line of Lots 533 to 564. The right-of-way for such approach was procured by the City of Peoria, and the approach itself, that is to say, S. B. I. Route No. 121, is just south of Roosevelt Street and extends over part of Lots 536 to 564 inclusive, to wit, over and across the north portion of Lots 536 to 540; over and across all of Lots 541, 542 and 543, except the south end thereof; over and across all of Lots 544 to 548 inclusive, except the north end thereof; over and across all of Lots 549 to 564, inclusive, except the north one-quarter thereof. A portion of Lots 544 to 564, inclusive, still remains between the south boundary line of Roosevelt Street and the north right-of-way line of S. B. I. Route 121. For all practical purposes Roosevelt Street has been abandoned for use as a highway as it is considerably lower than S. B. I. Route 121. As one of the witnesses for the Respondent stated, it exists only on paper. The western portion of S. B. I. Route 121, to wit, commencing at the western line of Monson Street and extending westward, curves to the north, and extends along and across Roosevelt Street to the bridge proper. S. B. I. Route 121 is approximately sixty feet in width at the top

of the fill;—the concrete roadway being forty feet in width. The base of the fill is approximately ninety feet in width, except at the east and west ends, where it is wider.

Claimants George Treharne and Rosie Treharne own Lot No. 534, and claimants Russell Youngman and Laura M. Youngman own the adjoining lot to the east, to wit, Lot No. 535. Each of such lots has a frontage of 33 feet on what is now S. B. I. Route No. 121, and what was formerly Roosevelt Street in the City of East Peoria, and each lot is 125 feet deep.

The grade or fill at the junction of S. B. I. Route No. 121 and Sanford Street is approximately 20 or 21 feet above the level of the ground there, and descends gradually to the East, being about 16 feet 2 inches high at the east line of the Treharne lot and 14 feet 5 inches high at the east line of the Youngman lot. The fill on S. B. I. Route 121 at the point where it intersects the west line of Clark Street is eleven feet four inches above the level of the ground; at the point where it intersects the west line of Monson Street is eight feet above the level of the ground; at the point where it intersects the west line of Globe Street is seven feet four inches above the level of the ground; and at the point where it intersects the east line of Franklin Street is six feet two inches above the level of the ground.

The grade on Sanford Street is to the south and the elevation of the fill on such Street descends from twenty or twenty-one feet at the Y to nine feet at the south end of the Treharne lot, and reaches the ground level at the north line of Maple Street, a distance of approximately 340 feet from the junction.

The Treharne and Youngman lots are both located in the Y formed by the junction of S. B. I. Route 121 and Sanford Street.

The base of the fill on Route 121 is from twenty-seven and one-half feet to forty-one feet north of the north line of the Treharne lot, and from ten feet to thirty feet north of the north line of the Youngman lot. The Treharne and the Youngman houses are each twenty feet south of the north property line.

The Treharne property is improved by a one-story frame dwelling about fifteen feet in height, with stained shingle siding and rubberoid roof. The kitchen and dining room have

modified lean-to roofs. The house has an area of 6,087 cubic feet, rests on a cement block foundation, is without basement, is equipped for electricity, but has no plumbing and no sewer or gas connection. The floors and trim are of pine, and the inside walls of plasterboard construction. There is an outdoor toilet and storm cellar, but no walks or curbs.

The dwelling now on the Youngman property is about fifteen feet in height, is similar in construction to the Treharne dwelling, but consists of two rooms with an area of 3,438 cubic feet; there is also an outdoor toilet, a shed and a well, but no walks or curbs, and no sewer or gas connection. The building which was on the property at the time of the construction of the approach was burned in the Spring of 1932, and the present building was constructed shortly thereafter.

The contract for the grading in connection with the construction of the approach was let November 20, 1931, work was commenced shortly thereafter, and the grading was completed June 23, 1932. The entire improvement was completed and opened for traffic on January 6, 1933.

Complaints were filed in this court on June 24, 1932, claimants George Treharne and Rosie Treharne claiming the sum of $3,500.00, and claimants Russell Youngman and Laura M. Youngman claiming the sum of $2,000.00.

The records of the City Clerk of the City of Peoria show that claimants George Treharne and Rosie Treharne filed a claim with the City Clerk of that City claiming damages to their property in the amount of $3,000.00. No payment was made by the City of Peoria, but the City Attorney of the City recommended that they be paid $2,000.00 and retain title to the property, or that they be paid $2,200.00 and convey title to the City of Peoria. Claimants refused the recommendation of the City Attorney and no further action was taken on such claim. Subsequently said George Treharne and Rosie Treharne, in their stipulation filed herein, agreed to accept $2,000.00 in full of their damages.

The records of the city clerk of the city of Peoria show that claimants Russell Youngman and Laura M. Youngman filed a claim with the city clerk of the city claiming damage to their property in the amount of $2,700.00. No action was taken by the city of Peoria on such claim. Subsequently Russell Youngman and Laura M. Youngman in their stipuation

filed in this cause, agreed to accept $900.00 in full of their damages.

It is not disputed that the embankments on S. B. I. Route 121 and on Sanford Street entirely block ingress to and egress from claimants' lots except by means of the afore-mentioned alley at the rear of said lots. Claimants contend that said embankments also interfere with the circulation of air around said lots, deprive them of their natural light, and leave them without proper drainage.

Where private property is not taken, but is damaged for public use, the property owner is entitled to recover the damages which his property has sustained, and the proper measure of damages in such case is the difference between the fair cash market value of the property unaffected by the im-provement and its fair cash market value as affected by it. *Dept. of Public Works* vs. *McBride,* 338 Ill. 347; *Dept. of Public Works* vs. *Caldwell,* 301 Ill. 242; *Brand* vs. *Union Ele-vated Co.,* 258 Ill. 133.

In condemnation proceedings, the land is regarded as taken or damaged, as of the date of the filing of the petition, and the value of the land must be fixed as of that date. *Pub-lic Service Co.* vs. *Leatherbee,* 311 Ill. 505; *City of Chicago* vs. *Collin,* 302 Ill. 270; *Chicago and State Line Ry. Co. vs. Mines,* 221 Ill. 448.

Where, however, the taking or damaging does not arise by virtue of condemnation proceedings, the damage is de-termined by the difference between the fair cash market value of the property just prior to the time the making of the im-provement commenced, and its fair cash market value just after the improvement is completed. *Ross* vs. *City of Chi-cago,* 91 Ill. App. 416.

The experts called by the respondent testified that as the result of the construction of the approach in question, the Treharne and Youngman properties have practically been de-stroyed from the standpoint of fair cash market value, but state that each property still possesses a small rental value.

The Attorney General suggests that inasmuch as the properties have practically been destroyed from the stand-point of fair cash market value, the respondent should re-quest the claimants to execute and deliver to the Director of the Department of Public Works and Buildings of the State

of Illinois proper deeds of dedication to their several lots. Claimants are unwilling to make such deeds of conveyance, and as we view the matter, we have no right to make the execution and delivery of such deeds a condition of an award.

J. H. Finnegan, an expert called by respondent, testified that the value of the Treharne lot as of November 1, 1931 was $1,500.00; that the value of the property was entirely wiped out by the construction of the embankment; that the damages to Treharne by reason of the construction of the embankment was $1,500.00.

Roy C. Montgomery, an expert called by respondent, testified that the value of the Treharne lot as of November 1, 1931 was $1,700.00; that as of January 1, 1933 the property had no value; that the damages to Treharne by reason of the construction of the improvement was $1,700.00.

Donald B. Walker, Assistant Highway Engineer, called by respondent testified that the value of the Treharne lot as of January 20, 1931 was $2,000.00; that the value of the property as of September 21, 1932, considered as if the embankment had not been built, was $1,500.00, on account of declining market value. The value on September 21, 1932, however, is immaterial, as the proper measure of damages is the difference between the fair cash market value of the property just before the making of the improvement commenced, to-wit, about November 1, 1931, and its fair cash market value just after the improvement was completed, to-wit, about January 1, 1933. *Ross* vs. *City of Chicago*, 91 Ill. App. 416.

Mr. Finnegan and Mr. Montgomery also testified on behalf of the respondent relative to the Youngman property, and both fixed the damages at $1,150.00. However, Youngmans, by their stipulation, agreed to accept $900.00 in full settlement of their damages, and consequently they are limited in their claim to such amount.

Upon consideration of all of the evidence in the record, we find that the claimants, George Treharne and Rosie Treharne, have sustained damages in the amount of $1,700.00 as the result of the construction of the improvement in question; and the claimants Russell Youngman and Laura M. Youngman have sustained damages in the amount of $900.00 as the result of the construction of such improvement.

An award is therefore entered in favor of the claimants George Treharne and Rosie Treharne, for the sum of Seventeen Hundred Dollars ($1,700.00); and

An award is also entered in favor of the claimants, Russell Youngman and Laura M. Youngman, for the sum of Nine Hundred Dollars ($900.00).